HUGO G. A. VON REITZENSTEIN, Respondent, v. JOHN C. TOMLINSON, JR., et al., as Executors of and Trustees under the Will of JOHN C. TOMLINSON, Deceased, Appellants.

(Argued June 11, 1928; decided July 19, 1928.)

*Frank C. Laughlin* and *Joseph W. Kirkpatrick* for appellants. The judgment cannot be sustained on the ground that plaintiff proved a cause of action on *quantum meruit* for the value of services performed for Tomlinson or his associates over and above twenty-five dollars per day and expenses provided for in the contract of employment, which amount he was concededly paid, for it is perfectly plain that upon no theory was it contemplated

that plaintiff was to receive anything more unless benefits or profits resulted from his services; and any negotiations or understanding between the parties to the effect that plaintiff was to receive an indefinite percentage of any benefits or profits derived by Tomlinson and his associates was in the nature of a bonus agreement conditioned on an event which plaintiff failed to prove ever happened. (*Yates* v. *Root,* 4 App. Div. 439; *Kleb* v. *Wallach,* 6 App. Div. 583; *Perrine* v. *Hotchkiss,* 58 Barb. 77; *Harrington* v. *Baker,* 81 Mass. [15 Gray] 538; *Metz* v. *Luckemeyer,* 12 N. Y. Supp. 550; 128 N. Y. 682; *Wendell* v. *Willetts,* 183 Fed. Rep. 1014; 2 Abb. Tr. Ev. [3d ed.] 938; *Ætna Nat. Bank* v. *Fourth Nat. Bank,* 46 N. Y. 82; *Collyer* v. *Collyer,* 113 N. Y. 442; *Earle* v. *Coburn,* 130 Mass. 596; *Whiting* v. *Sullivan,* 7 Mass. 107; *Boston Ice Co.* v. *Potter,* 123 Mass. 28; *Municipal Water Works Co.* v. *Ft. Smith,* 216 Fed. Rep. 431.) The court committed errors of law in denying defendants' motion at the close of plaintiff's case for a dismissal of the complaint, and the motion at the close of the entire case for a directed verdict on the ground that there was no competent evidence of the value of the Havana Tobacco Company's bonds or the stocks and bonds of the Cuban Tobacco Company, to which rulings exceptions were duly taken, and in denying defendants' request to charge the jury that there was no competent evidence of the market value of these securities, and in charging " there is no evidence of exact value, but there is evidence from which a value may be found. I will so charge." (*MacIlhardy* v. *Chambers,* 117 N. Y. 532; *State Bank of Pike* v. *Brown,* 165 N. Y. 216; *Taylor* v. *Friedman,* 214 App. Div. 198; *Shuck* v. *Fox,* 126 App. Div. 565; *Amsterdam* v. *Gold,* 123 Misc. Rep. 300; *Whelan* v. *Lynch,* 60 N. Y. 469; *Jones* v. *Jones,* 120 N. Y. 589; *Watts* v. *Phillips-Jones Corporation,* 211 App. Div. 523; 242 N. Y. 557; *Wildes* v. *Robinson,* 50 App. Div. 192; *Stein* v. *Hartshorn,* 123 App. Div. 467; *Sloan* v. *Baird,* 162 N. Y. 327; *Bunte* v. *Schumann,* 46 Misc. Rep. 593;

*Ran v. Seidenberg,* 53 Misc. Rep. 386; *Galinger* v. *Galinger,* 4 Lans. 473.)

*Benjamin P. De Witt, Roger Hinds* and *Sidney Pepper* for respondent. The action was brought on *quantum meruit* and was properly so brought. Neither plaintiff nor defendant pleaded or proved a contract to pay a specific amount of compensation. (*Varney* v. *Ditmars,* 217 N. Y. 223; *Winch* v. *Warner,* 186 App. Div. 710; *Plattenburg* v. *Briggs,* 166 App. Div. 326.) The evidence as to market value of the bonds and stock of the new company was properly received. (*Watts* v. *Phillips-Jones Corp.,* 211 App. Div. 523; 242 N. Y. 557; *Harrison* v. *Glover,* 72 N. Y. 451.) There is competent evidence in the record as to the value of plaintiff's services. (*Boyd* v. *Vale,* 84 App. Div. 414; *Matter of Benton,* 71 App. Div. 522; *Triangle Waist Co.* v. *Todd,* 223 N. Y. 27; *Slocovich* v. *Orient Mut. Ins. Co.,* 108 N. Y. 56.) The court did not commit reversible error in its rulings on the admission or exclusion of evidence. (*Miller* v. *Coates,* 66 N. Y. 609; *Quaker* v. *Manhattan, etc., Co.,* 164 N. Y. Supp. 182; *Meehan* v. *Kaplan,* 184 N. Y. Supp. 578; *Baccaria* v. *Landis,* 84 Misc. Rep. 396.)

CARDOZO, Ch. J. Defendants' testator, who for convenience will be called defendant, was a lawyer in New York. For himself and his clients he held bonds of the Havana Tobacco Company to the extent of $2,000,000 or more. In April, 1922, a foreclosure suit was imminent, for default had been made in the payment of the interest. The notion came to the defendant that he might improve his chance of a favorable settlement by unearthing graft or other wrongdoing in the conduct of the business.

Plaintiff, who was then in Cuba, after a more or less checkered career of miscellaneous activities, was thought of as a fitting man to carry on the search. After a talk with the defendant's son, he was employed to gather

such information as he could, and report to his employer. For this he was to receive $25 a day besides expenses, and also " an appropriate percentage " of the benefits, if any, accruing through his efforts. He was occupied in the work of investigation for thirty-six days. In this period he brought together affidavits and rumors of wrongdoing and mismanagement which were received by his employer with expressions of satisfaction. He was paid his expenses as he went along, and also his *per diem* wage. Then came a term of silence. The defendant acting for himself and his clients filed a petition to intervene in the pending action of foreclosure. Other bondholders, represented by other counsel, petitioned for the same relief. Intervention was permitted in June, 1923. About eight months later a reorganization committee offered a plan of reorganization, which thereafter went into effect. As a result the bonds of the old company were exchanged for those of the new on the basis of $450 of the new for $1,000 of the old. Preferred shares of the new company were allotted besides. Plaintiff made demand of the defendant for " an appropriate percentage." The demand was followed by a refusal, and later by this action. The value of thirty-six days of work in collecting information is fixed by the plaintiff at $125,000, on which he credits $900 paid upon account. He sues for the balance on the footing of a *quantum meruit*. A verdict for $25,000 has been unanimously affirmed.

The defendant's promise to pay " an appropriate percentage " in excess of the *per diem* stipend is too indefinite and meaningless to be enforcible as a promise for the payment of anything more than the reasonable value (*Varney* v. *Ditmars*, 217 N. Y. 223). It is, however, significant as rebutting an agreement that value was liquidated by the liquidation of the daily wage. As to what the work was worth, the door is still wide open. Whatever it was worth in excess of payments made,

the plaintiff should receive (*Varney* v. *Ditmars, supra; Winch* v. *Warner,* 186 App. Div. 710; *Plattenburg* v. *Briggs,* 166 App. Div. 326). The case is to be disposed of as founded on a common count for service rendered at request.

Two errors or classes of error vitiate the judgment. There was error in rulings upon evidence, rulings closely related to the quantum of the verdict. There was error in letting the case go to the jury on the theory that the gains accruing to the defendant upon the reorganization of the company might be found to have accrued to him as the outcome of the plaintiff's efforts.

To prove the value of the services before reorganization and afterwards, the court received the reports of the National Quotation Bureau, an association supplying its subscribers with quotations of the current prices of bonds and shares of stock.. One Corson, the representative of the bureau, testified that before making its reports as to the securities of the Havana Tobacco Company, it sent out its employees to a group of bankers and brokers, reputed to be dealers, with instructions to ascertain the prices bid and asked. From the returns thus collected, it compiled its figures. There is no evidence that its employees did their work correctly. There is none that its price lists are generally recognized or acted upon as accurate by dealers in the market. This at least must be proved before quotations, not otherwise authenticated, become evidence of value (*Watts* v. *Phillips-Jones Corp.,* 211 App. Div. 523; 242 N. Y. 557). All that we have here is the fact that the bureau sells its service to subscribers in numbers not disclosed. On this basis without more the witness was allowed to read from the price lists the bid and asked quotations (*Harrison* v. *Glover,* 72 N. Y. 451), for actual sales there had been none. In April, May and June, 1922, the quotation for a bond of the Havana Tobacco Company was 20 bid and 30 asked;

in December, 1924, the quotation for a bond of the Cuban Tobacco Company, the reorganized corporation, was 40 bid. Evidence was received from the same sheets as to bid and asked prices for the new preferred shares. For these the quotation in January, 1925, was 25 bid and 33 asked.

The use made of these figures in the charge of the trial judge determined the verdict, or so we may reasonably infer. The total number of bonds held by the defendant and his associates, if we reckon the par value, was about $2,500,000. The jury were told that they were to consider the difference between the bid price of the bonds before the reorganization and after, together with the bid price of the preferred shares, and in the light of these figures were " to say whether this work of this plaintiff saved the defendant and his associates about $250,000." If they found such a gain, they were told that they might award to the plaintiff whatever percentage they thought fair, various rates being suggested by way of illustration from one per cent to ten. The result reflects the charge.

Error more deep-seated is here than an infringement of the hearsay rule through the admission of unauthenticated price lists. The use made of these lists, as well as of the reorganization documents received under objection, betrays a fundamental misconception of the basis of the plaintiff's claim. There is in truth no evidence that what was done by the plaintiff " saved the defendant and his associates about $250,000," or any other sum. There is no evidence that the gains accruing to the defendant through the appreciation of the new securities were the fruits of plaintiff's services. The defendant's petition to intervene in the foreclosure suit contains a long recital of acts of mismanagement by the promoters and officers of the Havana Tobacco Company, unrelated to any acts uncovered by the plaintiff. There are indeed two or three specifications that were inspired in all likelihood by reports transmitted by the plaintiff, but relatively to the

whole they are incidental and subordinate. This sufficiently appears from the record now before us, though the defendant was unduly limited at the trial in his attempt to show the information that had come to him from others. Only by the merest guesswork could any jury say that these incidental and subordinate charges, the plaintiff's sole contribution to the defendant's ammunition, had determined the result, and brought about a reorganization upon terms more favorable to the bondholders than would otherwise have been offered. Still less could they estimate the extent of the difference with even approximate correctness. "Food for speculation will not serve as the basis of a verdict" (*Pauley* v. *Steam Gauge & Lantern Co.*, 131 N. Y. 90, 100).

The case was thus submitted to the jury on a theory fundamentally erroneous. The promise to pay a percentage of gains is void for indefiniteness, as the plaintiff now concedes. If any gains have accrued, there is no evidence that what was done by the plaintiff affected the amount. In such a situation, neither the terms of the reorganization nor the prices of the new securities had anything to do with the value of the services. The plaintiff should be paid for his work according to the standard of the market, or, in the absence of such a standard, according to such fair approach thereto as may be found to be attainable.

The judgment of the Appellate Division and that of the Trial Term should be reversed and a new trial granted, with costs to abide the event.

POUND, CRANE, ANDREWS, LEHMAN, KELLOGG and O'BRIEN, JJ., concur.

Judgments reversed, etc.