CLAYTON R. BRAGDON

*vs.*

MORRIS SHAPIRO, D.B.A.

ARMY & NAVY STORE

Aroostook.   Opinion, January 5, 1951.

*Donald N. Sweeney,* for plaintiff.

*Scott Brown,*
*Ralph K. Wood,*
*Roland B. Atchison,* for defendant.

SITTING: MURCHIE, C. J., THAXTER, FELLOWS, MERRILL, NULTY, WILLIAMSON, JJ.

WILLIAMSON, J.  This is an action by the plaintiff to recover a balance due for services rendered while plaintiff was employed in defendant's store for a 39-week period from January 1 to September 27, 1947.  In the first count the plaintiff seeks to recover the sum of $1,950 upon a contract for a salary of $100 a week.  The second count is on a *quantum meruit.*  From the jury verdict of $1,369.55, it is apparent that the jury rendered its verdict under the *quantum meruit* count for the value of plaintiff's services in excess of $50 a week received from the defendant.  The case is before us on a motion for a new trial and on exceptions to a portion of the judge's charge.

In considering the motion we will apply the familiar rules that the evidence with all proper inferences drawn therefrom is to be taken in the light most favorable to the jury's findings and that the verdict stands unless manifestly wrong. *Morneault* v. *Inh. of Town of Hampden,* 145 Me. 212, 74 A. (2nd) 455; and *Lessard* v. *Samuel Sherman Corporation,* 145 Me. 296, 75 A. (2nd) 425.

Plaintiff was employed by defendant from 1934 until April 1943. In 1937 he was transferred from defendant's store in Houlton to become manager of the store then opened by defendant in Presque Isle. Through 1942 plaintiff's compensation was paid by a weekly wage in increasing amounts and by a bonus at each Christmas time· or shortly after the new year in varying amounts. Defendant stated, "it was really a Christmas present in the first place, then it worked into a bonus." From January 1st until April 1943, compensation was paid by a weekly salary and a bonus on termination of employment.

In 1942 and 1943 the weekly salary with the bonus made a total compensation of $100 on a weekly basis. We are not here concerned, nor was the jury, with deductions for income or social security taxes withheld by the employer.

In July 1946 the plaintiff was again employed under an agreement stated by plaintiff as follows:

"A.  Well, I was to go back managing the store as I had done before when I was working for him full time, pay to be the same as in the past, and we decided on fifty dollars—to draw fifty dollars per week and the balance to be paid at the end of the year.

Q.  Now, you went to work in July, 1946 in the new store under that arrangement?

A.  Yes."

The defendant, while denying any agreement beyond a $50 weekly salary, said, speaking as of July 1946: "Well, they (meaning plaintiff and other full-time employees) knew I always used them all right in the past and they figured I would probably use them likewise."

At Christmas time in 1946 plaintiff again received a bonus which with the weekly payments of $50 made his

compensation $100 a week. In 1947 he continued to receive $50 a week. He voluntarily ended his employment on September 27th.

Shortly before leaving his position the plaintiff drew and cashed a bonus check, to use plaintiff's words, "for the balance of pay, which amounted to one hundred dollars a week." On informing defendant, plaintiff stated the following conversation between them:

"I told him what I had done and he said you shouldn't have done that because the balance of pay didn't come until the end of the year. I says: 'If that is the way you feel about it, I can wait until the first of the year.' "

The plaintiff then returned the amount so drawn and after the first of the year requested payment by the defendant who informed him in effect that to collect the balance he should have remained in defendant's employ until the end of the year.

Such are in brief the facts from which we are to determine whether the jury was entitled to find for the plaintiff with damages measured by the fair and reasonable value of his services for the 39 weeks of employment in 1947 less the weekly payments of $50 received from defendant.

It was the function of the jury to pass upon the credibility of the witnesses, and in our view the jury was entitled to make the findings of fact which we have stated briefly and not in complete detail.

Plaintiff, as we have said, urged that he had a firm contract from July 1946 for a weekly salary of $100, basing his claim on the ground that his pay was "to be the same as in the past." In this conclusion the jury did not agree and understandably so. "In the past," if we take 1942 and 1943, his "pay" had been a weekly salary plus a bonus making his "pay" $100 a week. Prior to 1942 both weekly sal-

ary and the bonus had been in varying amounts, and "in the past" the bonus was paid at each year end and at the termination of employment in 1943.

The plaintiff erroneously concluded that the element of a bonus, uncertain in amount, was not included in the 1946 agreement. The agreement was that plaintiff should receive $50 a week salary plus extra compensation or bonus at the end of each year without, however, forfeiture of the bonus by leaving defendant's employ during the year. We may point out that the agreement of July 1946 continued without change through 1947, and further that at no time was the sum of $100 a week specifically mentioned by either party in July 1946 or thereafter, or at least until the employment was ended.

The defendant contends in his argument that the agreement provided for a weekly salary of $50 plus a bonus at the year end, if business warranted, and in such an amount as defendant might determine.

The defendant fairly sets forth the agreement between the parties except that the bonus did not depend upon plaintiff remaining in the employ of defendant until the end of the year. Such was not the case in 1943 and the agreement of 1946 was for pay as in the past. In this respect the arrangement differed from the more usual bonus wherein the employee normally forfeits his bonus if he leaves his position voluntarily.

The agreement was substantially for a share of the profits, determined roughly to be sure before the year end. The defendant said that the payments over the years to 1943 "always varied according to the business we done, naturally." He estimated his profits "mainly on what money I took in . . . . The more we took in, the more I thought we would make." His actual profit was ascertained later upon taking stock. Defendant succinctly stated the situation in saying:

"They (meaning the plaintiff and other full-time employees) always had that bonus, and according to what business we were going to do, it was up to them."

Defendant cannot well say that the bonus was a gift or gratuity. A bonus in some amount, if business warranted; that is, if there were profits, was a part of the compensation or reward for which plaintiff performed his services.

The plaintiff could not recover upon the contract alleged by him, for the jury properly found that such a contract did not exist. No more could the plaintiff recover upon the agreement which the jury could properly find existed in fact. Such an agreement is not an enforceable contract. Its terms are too indefinite and meaningless to permit recovery of a bonus or extra compensation as such. No standard is set forth sufficiently certain to guide the fact-finder in determination of what the bonus should be. Too much is left to the judgment of the employer.

"An offer must be so definite in its terms, or require such definite terms in the acceptance, that the promises and performances to be rendered by each party are reasonably certain."

Restatement of the Law, Contracts, Sec. 32; *Ross* v. *Mancini*, 146 Me. 26, 76 A. (2nd) 540, 12 Am. Jur. 554, 35 Am. Jur. 501, 17 C. J. S. 364. See also *Corthell* v. *Summit Thread Co.*, 132 Me. 94, 167 A. 79, 92 A. L. R. 1391 and note for full discussion of the principles involved.

There is no taint of illegality about the agreement and the only reason why the plaintiff may not recover thereon rests in its lack of definiteness. There has been a full performance of its terms by the plaintiff. He does not seek damages for failure to give employment, but the fair value of his services satisfactorily rendered under an agreement intended by both parties to provide a weekly salary plus a bonus.

Plaintiff is not barred, however, from relief. It is not necessary that he lose the fair value of his services by reason of an illusory contract for a bonus.

The present case is analogous to that of *Von Reitzenstein* v. *Tomlinson,* 249 N. Y. 60, 162 N. E. 584, in which the plaintiff was entitled to a per diem stipend plus an appropriate percentage of the benefits, if any, resulting from his services. Justice Cardozo, then Chief Judge of the New York Court of Appeals, stated the applicable principles as follows:

> "The defendant's promise to pay 'an appropriate percentage' in excess of the per diem stipend is too indefinite and meaningless to be enforceable as a promise for the payment of anything more than the reasonable value. Varney v. Ditmars, 217 N. Y. 223, 111 N. E. 822, Ann. Cas. 1916B, 758. It is, however, significant as rebutting an agreement that value was liquidated by the liquidation of the daily wage. As to what the work was worth, the door is still wide open. Whatever it was worth in excess of payments made, the plaintiff should receive. *Varney* v. *Ditmars, supra;* - - - - The case is to be disposed of as founded on a common count for service rendered at request."

Professor Williston, in discussing offers and agreements indefinite as to price, says:

> "But the promise of an indefinite payment in addition to a definite price, though unenforceable as made, may be 'significant as rebutting an agreement that the value was liquidated by the liquidation of the daily wage,' and thus preserve the right to recover to the extent the reasonable value exceeds the specified sum."

I Williston On Contracts, Revised Edition, Sec. 41, citing the *Von Reitzenstein* case, *supra.* See also I Williston, Sec. 49 and cases cited.

In the instant case, the agreement carried more than rebuttal value. It effectively disposed of any understanding that the weekly wage was intended to liquidate the value of the services rendered. In substance, the jury was so directed by the presiding justice and properly so.

The bonus payments in 1942 and in 1943—and again in 1946—were 100 per cent of the salary. $50 a week became with the bonus $100 a week. It would be difficult indeed to convince a businessman on such a record that $50 a week was intended to pay for the value of the services rendered, and that year after year the employer paid from the kindness of his heart $100 for services valued by him at $50.

The jury could properly find as they did that the plaintiff was entitled to the fair value of his services for the 39-week period of 1947 and that such value was not measured by the payment of $50 a week. The motion for a new trial was a so-called "general motion" on the usual grounds including excessive damages. Neither in brief nor in argument did defendant suggest that the damages were excessive and that ground of the motion may be considered as waived.

We return to consideration of the exception to an instruction in the charge which reads:

> ". . . . On the other hand if you find that the defendant's contention is correct and you find for the defendant, then I have reference to the second count in the plaintiff's writ, and that is what counsel has stated to you is known and we call it quantum meruit; that is, meaning what the matter or the thing is reasonably worth.

> Now, if you find for the plaintiff, and in connection with his contention, then as I have stated to you you will find in the amount stated and interest if you find there was a demand. If you believe the defendant's contention; that is, that his contention is correct, then, in finding for the defendant, you

may find for the defendant or you may find for the plaintiff upon the defendant's contention in the sum which you feel is fair and reasonable for the services rendered in excess of the amount of fifty dollars already paid—some bonus was to be paid— to the plaintiff either at the end of the year or at the termination of the plaintiff's services and you find that the services of the plaintiff were terminated without breach on the part of the plaintiff, then you may find that the plaintiff is entitled to recover what is reasonably fair for the services in excess of the fifty dollars a week which the defendant states was due to the plaintiff and was paid to him. You will not find upon the second count, upon quantum meruit, except that you believe the story or the contention of the defendant."

Taken as a whole, the instruction directed the jury if "the story or the contention" of the defendant was believed, to ascertain the reasonable value of the plaintiff's services and to render a verdict based thereon with credit for the payments made. If the value of the services exceeded the credits, the verdict would be for the plaintiff; otherwise for the defendant.

The defendant in his argument placed undue stress upon the word "contention." The word in the sense used by the presiding justice meant the story or version of the agreement presented by the defendant, and not the defendant's theory of the case. The court was directing the jury's attention to the legal results which would follow dependent upon the facts found by the jury. Taken in this light, the instruction fairly and understandably set forth the situation which the jury could properly find existed, and on such facts the verdict was properly rendered.

It was unnecessary that the charge set forth in detail the evidence on either side or the legal reasons which called for a decision on the *quantum meruit* count. Had the instruction gone into more detail, both of fact and of law, the plain-

tiff would have been entitled to an instruction which would have led to the same result. The defendant takes nothing from the exception to the instruction.

The entry will be:

> *Motion overruled and
> exceptions overruled.*