# EDWARD F. MEANEY III *v.* CONNECTICUT HOSPITAL ASSOCIATION, INC., ET AL.
## (SC 15895)

Callahan, C. J., and Berdon, Palmer, McDonald and Peters, Js.

Argued June 3—officially released August 31, 1999

*Mark R. Kravitz,* with whom were *David J. O'Callaghan* and, on the brief, *Peter M. Wendzel* and *Jennifer D. Jackson,* for the appellants (named defendant et al.).

*John Rose, Jr.,* with whom was *Scott A. Bennett,* for the appellee (plaintiff).

*Everett E. Newton, Cynthia L. Amara, Loretta M. Smith* and *Janet C. Spegele* filed a brief for the Connecticut Business and Industry Association as amicus curiae.

*Opinion*

PETERS, J. The dispositive issue in this appeal is whether, as a result of unconsummated negotiations for incentive compensation to supplement the salary and benefits provided by an enforceable employment contract, an employee may recover damages pursuant to a claim in restitution for unjust enrichment. The issue is not whether the employee has a contract claim for the payment of a reasonable incentive bonus, but whether, in the absence of such a contract, the employee has a right to recover the amount by which his services benefited his employer. This is an issue of first impression for the appellate courts of this state. We conclude that the employee does not have a right of recovery under the circumstances of this case.

The plaintiff, Edward F. Meaney III, brought an action in seven counts against four defendants. The two corporate defendants are the Connecticut Hospital Association, Inc. (Association), and CHA Insurance Services,

Inc. (CHAIS), an affiliate of the Association that is engaged in the business of selling insurance. The plaintiff also named as defendants two individuals, Dennis P. May and Donald A. Berkowitz, who were the president and a senior employee, respectively, of the Association and officers of several of its affiliates.

At trial, the plaintiff's principal allegations were that the individual defendants intentionally had made misrepresentations that had induced him to agree to the terms of a written employment contract that did not include incentive compensation[1] and that the corporate defendants wrongfully had discharged him in breach of his contract and in violation of public policy.[2] The plaintiff was able to prove none of these allegations.[3] He did not allege that the defendants, in breach of their contract obligations to him, had failed to pay him incentive compensation in addition to his designated salary and benefits.

The plaintiff's final allegation, in count seven of the complaint, was that, regardless of his other claims for recovery, he was entitled to recover damages from the corporate defendants for unjust enrichment premised upon an implied promise to pay the plaintiff a fair value for the services he had rendered. There is no question

---

[1] These allegations were contained in the second count of the plaintiff's second amended complaint.

With respect to the defendant Berkowitz, the plaintiff also alleged tortious interference with the plaintiff's performance, in count five, and defamation, in count six.

[2] These allegations were contained in counts one and three of the plaintiff's second amended complaint.

[3] The trial court directed a verdict against the plaintiff on counts one, three, five and six. The jury found against the plaintiff on count two. With respect to count four, alleging breach of contract by CHAIS with respect to an insurance product called Generations, the jury awarded the plaintiff damages in the amount of one dollar. The plaintiff has not appealed from the judgment rendered against him on counts one, two, three, five and six. He similarly has not challenged the adequacy of the damages award on count four.

that the plaintiff was paid the salary and benefits to which he was entitled pursuant to his employment contract. The plaintiff claimed that, in addition, he was entitled to recover such fair value because the defendants had agreed to supplement his salary with incentive compensation and had failed to do so. On this count, the jury awarded the plaintiff $710,901.

The trial court denied the motion of the corporate defendants to set aside the jury verdict on count seven, for judgment notwithstanding the verdict, for a new trial and for remittitur of damages. The defendants have appealed from the judgment rendered in favor of the plaintiff on this count.[4] We reverse the judgment of the trial court.

I

Many of the facts are undisputed. The plaintiff is a licensed insurance agent who began his employment with the defendants on January 15, 1991. In accordance with a letter that Berkowitz sent on December 17, 1990, and that the plaintiff signed, he was hired as the director of insurance services at CHAIS at an annual salary of $65,000 plus fringe benefits. The salary was $10,000 more than the plaintiff had been earning at his prior position, and $21,000 more than he had been earning one year earlier. The letter referred to an enclosed employment application, which the plaintiff also signed. The application described his employment as being "at-will" and expressly superseded any oral representations that might have accompanied the plaintiff's employment.

Although the plaintiff's initial employment contract did not contain any provision for bonuses or incentive

---

[1] The defendants appealed from the judgment of the trial court to the Appellate Court, and we transferred the appeal to this court pursuant to Practice Book § 65-1, and General Statutes § 51-199 (c).

pay, he had expressed an interest in that form of compensation from the outset. The plaintiff was hired to improve the profitability of CHAIS, an Association affiliate that, since 1981, had operated a workers' compensation trust (trust) that offered workers' compensation insurance to Association member hospitals. The plaintiff expected to be paid a bonus in addition to his salary, not initially, but at some undefined subsequent date when he had succeeded in turning the trust around.

The Association management recognized the value of the plaintiff's entrepreneurial contributions in making the trust more profitable than it had been in the years immediately preceding his employment. In 1991, six months after he had started to work, the defendants increased his salary by $4000; in 1993, the defendants raised his salary by an additional $2800. As a result, before the plaintiff's discharge, he was earning $72,800 a year, a sum considerably in excess of any salary that he had earned previously.

The Association's management also recognized that the plaintiff's services warranted consideration of incentive compensation for him. During 1992, the second year of the plaintiff's employment, under his leadership, the operation of the CHAIS trust was becoming financially more successful. In the spring of that year, Berkowitz wrote May: "I do think we need to sit down with [the plaintiff] to discuss some incentive program. . . . [H]e is a most valuable and productive employee and we at [the Association] should do everything we can, within reason, to retain him." Later in 1992, May tendered to the plaintiff a proposal for incentive pay, which would have increased the plaintiff's annual compensation from salary and commissions to approximately $100,000, starting January 1, 1993. *The plaintiff did not accept this proposal.* In January, 1993, the plaintiff tendered an alternate proposal for his future compensation, under which he would immediately have

received an increase in his base salary, without commission, to $110,000, and would in addition have become eligible for commissions, not for earnings stemming from CHAIS' trust business, but from other Association enterprises with which he had become involved. Like the proposal tendered by the defendants, the plaintiff's proposed incentive pay plan would have become effective on January 1, 1993. The plaintiff's proposal also included a number of other suggestions about the operations of CHAIS and the possible terms of a noncompete clause that was not then a part of his employment contract. *The defendants did not accept the plaintiff's proposal.*

In the early months of 1993, the parties continued to discuss their respective proposals for incentive pay for the plaintiff. While the parties were engaged in these discussions, the defendants increased the plaintiff's salary by $2800. Having come to no agreement, the parties decided to ask an outside consultant to evaluate the compensation picture, without binding themselves to accept whatever proposal the consultant might make. Although the plaintiff suggested a number of possible consultants, the defendants chose instead to engage the services of Kenn R. Allen, the president of the Meadowbrook Agency in Detroit, Michigan.

Allen's report, issued on May 9, 1993, was very critical of the plaintiff's work for CHAIS. In the report, Allen found fault with the plaintiff's management style and attributed his financial success with the trust to "competitive pricing." This negative report was a contributing factor in the defendants' termination of the plaintiff's employment on May 27, 1993. The terms of the plaintiff's employment contract permitted the defendants to discharge him at will.

The only evidence of the value of the services rendered by the plaintiff was the testimony of his expert

witness, Karen A. Murphy, the president of Stamford Financial Group. Testifying over the objection of the defendants, Murphy stated that, in 1995, two years after the plaintiff's discharge, the value that the defendants' insurance operations received directly from the plaintiff's contribution was between $2,200,000 and $5,100,000. She also testified that, if the plaintiff's compensation were compared to that earned by employees at other insurance agencies, the plaintiff had been underpaid by $336,000 over the entire course of his employment by the defendants. That undercompensation principally was due, in her view, to the defendants' failure to pay the plaintiff a bonus equaling 25 percent of the profits that the defendants had earned from trust revenues.

The trial court instructed the jury, with respect to count seven,[5] that, if it found that the plaintiff had been

---

[5] On count seven, the entire instructions given to the jury were as follows: "Unjust enrichment applies when justice requires compensation to be given for services rendered under certain circumstances. The basis of a right of recovery under the doctrine of unjust enrichment is that in a given situation, it is contrary to good conscience for one party to retain a benefit which has come to that party at the expense of another. In this case, compensation, under the unjust enrichment theory, can only be given for services that [the plaintiff] rendered at [the Association] and CHAIS during his period of employment, that is from January, 1991, to May, 1993. [The plaintiff] has, of course, already been compensated for his services during this period, by the salary that has been paid to him. If you conclude, from the evidence, however, that [the plaintiff] was additionally promised a bonus or incentive compensation for his services during this period and that no such bonus was paid, you may award him a sum representing a reasonable incentive compensation for his services during this period. The theory of [the plaintiff's] case is that the defendants have been unjustly [enriched by] retaining the incentive compensation owed to the plaintiff. Any such award must be subject to the instructions on this point that I am about to give you. If you make an award under this count, the amount of your award must represent the reasonable compensation for [the plaintiff's] services during this period [t]hat is, from January, 1991, to May, 1993, in addition to his salary, to which you find that he is entitled. While you may consider the earnings realized by the defendants, as a result of the plaintiff's services, your task is, obviously, not to simply award those earnings. Employees often make profits for their employers and the employers are entitled to retain those profits.

promised a bonus or incentive compensation in addition to a salary for his services, the jury might make an award to him for "a sum representing reasonable incentive compensation . . . ." In determining the amount of such an award, the jury was told that it might "consider the earnings realized by the defendants, as a result of the plaintiff's services . . . ." Although the court cautioned the jury against assigning all of an employer's profits to an employee, it did not further narrow the jury's discretion to determine the amount by which the defendants had been benefited by the plaintiff's services.

The jury awarded the plaintiff damages of $710,901. Neither the plaintiff nor the trial court has articulated the manner in which the jury reasonably could have arrived at that amount.

The trial court rendered a judgment in accordance with the jury's verdict on count seven. Rejecting the defendants' motions to the contrary, the court concluded that, "when unjust enrichment is duly pled, an employee . . . may, in appropriate cases, recover a bonus in addition to his salary even when the promised amount of the bonus is too indefinite to be enforced as a matter of contract law." Construing the evidence

The only question here is whether the plaintiff is entitled to some form of reasonable incentive compensation for his services during this period, that he was promised by his employer. In making his case under this count, the plaintiff must prove that, one, the defendants were benefited. Two, that the defendants unjustly did not pay the plaintiff for the benefit. And, three, that the failure of payment was to the plaintiff's detriment. You are not required, if you find liability on this matter, to calculate the plaintiff's damages with mathematical exactitude. Instead, all that is required is that the evidence, which has been presented to you, must form the foundation for a fair and reasonable estimate of the plaintiff's damages. You have been presented with evidence concerning the reasonable value of the plaintiff['s] service to the defendant[s]. And you may consider this evidence in determining the plaintiff's damages if you find it appropriate to do so."

On appeal, the defendants do not challenge the propriety of the charge.

in the light most favorable to upholding the jury's verdict, the court held that the plaintiff "was for a long time promised appropriate incentive compensation in addition to his salary if he turned [the Association's] insurance fortunes around. He amply fulfilled the stated condition. To turn him away with just his salary under these circumstances would be inequitable. Such a decision would unjustly enrich the employer at the employee's expense. . . . Under these circumstances, the law of unjust enrichment provides an appropriate remedy." The court went on to note that "[t]he question of reasonable value was plainly a question for the trier of fact in this case as well. It should be pointed out that the jury in this case was not left to its unfettered speculation on the question of reasonable value. There was ample evidence on industry standards, some of it generated by [the Association] and its agents. The jury's award, while generous, is not unsupported by the evidence. As mentioned, [the plaintiff] brought millions of dollars in premiums into the [Association's] domain."

## II

In their appeal from the judgment of the trial court, the defendants raise four issues. They maintain that: (1) the plaintiff, as a matter of law, has no right to recover under a claim of unjust enrichment because his relationship with the defendants was governed in its entirety by the terms of his express contract of employment; (2) the plaintiff, as a matter of fact, presented no evidence to support a promise that he would be paid more compensation than that provided for in his written contract of employment; (3) the trial court improperly permitted the plaintiff's expert to testify concerning the value of the defendants' insurance operations; and (4) the trial court improperly denied the motion for remittitur and for a new trial because the damages awarded are unsupported by the evidence and unconscionable. Taking up these issues in reverse

order,[6] we agree that the judgment of the trial court must be reversed.

## A

The parties differ substantially in their characterization of the facts and the legal principles that underlie the plaintiff's seventh count. We begin, therefore, by clarifying these predicates to the defendants' claims of error.

Because the plaintiff prevailed at trial, we view the evidence in support of his claim for unjust enrichment in the manner most favorable to sustaining his claim. *Sorrentino* v. *All Seasons Services, Inc.*, 245 Conn. 756, 771, 717 A.2d 150 (1998); *Purzycki* v. *Fairfield*, 244 Conn. 101, 112–14, 708 A.2d 937 (1998). The jury reasonably might have found that the parties had agreed to the concept of incentive pay for the plaintiff. That conceptual agreement was, however, time bound. There was no evidence of any agreement that the plaintiff was to receive incentive pay before January 1, 1993. Neither the proposal tendered by the plaintiff nor that tendered by the defendants had an earlier starting date.[7] Of necessity, such incentive pay would have ended on May 27, 1993, when the defendants discharged the plaintiff. The maximum duration for compensation measured by incentive pay was, therefore, roughly five months.

The fact that the plaintiff left his employment at the behest of the defendants does not extend the period of his eligibility for incentive pay. It is now the law of the case that the plaintiff was not discharged improperly.

---

[6] Because we agree with the defendants' other claims, we need not consider their third claim dealing with the admissibility of the expert testimony.

[7] The trial court was, therefore, mistaken in its observation that the plaintiff had been promised appropriate incentive compensation covering a long period of time in addition to his salary if he turned the Association's insurance fortunes around.

The defendants expressly had reserved the right to discharge him by including in his employment contract a provision describing him as an employee "at-will" whose employment could be terminated at any time without cause. As far as the record shows, the defendants exercised that authority in good faith, perhaps because they lost confidence in the plaintiff's work as a result of the Allen report. There is nothing in the record to suggest that the defendants terminated the plaintiff's employment in order to avoid paying him incentive compensation.[8] Analytically, therefore, the plaintiff's case stands on the same footing as if, buoyed by his success in turning around the defendants' trust business, he had been offered a better position elsewhere and had accepted that offer.

### B

If the law affords any remedy to a person in the position of the plaintiff, that law is the law of restitution for unjust enrichment. The plaintiff could not sue to recover incentive compensation on an express contract in the absence of a provision in the contract containing terms to that effect. No such term has been alleged to exist. He could not sue on a contract implied in fact because the negotiations between the parties did not identify an industry standard or any other objective benchmark that could have supplied the specific terms for a court to enforce. Agreement on the concept of incentive pay, without more, is too indefinite to permit recovery by way of a contract remedy, express or implied. The plaintiff does not argue to the contrary.

Courts and commentators have used disparate nomenclature to describe the restitutionary claim that

---

[8] In his brief, the plaintiff alleges that a letter written by his counsel, claiming a right to incentive payments, was the reason why Berkowitz terminated the plaintiff's contract to market the Generations product. The jury awarded the plaintiff damages in the amount of one dollar on his claim for breach of contract in that regard. That issue is not before us in this appeal.

is the plaintiff's only possible recourse. See *Bershtein, Bershtein & Bershtein* v. *Nemeth*, 221 Conn. 236, 241–42, 603 A.2d 389 (1992); *Brighenti* v. *New Britain Shirt Corp.*, 167 Conn. 403, 407, 356 A.2d 181 (1974); *Cecio Bros., Inc.* v. *Greenwich*, 156 Conn. 561, 564–65, 244 A.2d 404 (1968). Although the plaintiff alleged, in this case, that he was suing on an "implied promise" by the defendants, that allegation cannot be taken literally. The absence of promissory obligation is the premise underlying the plaintiff's claim. Although, linguistically, such a claim is sometimes denominated an implied-in-law claim, or a quasi contract claim, it is more descriptive to call it what it is, a claim in restitution whose basis is the alleged unjust enrichment of one person at the expense of another. See 1 G. Palmer, Law of Restitution (1978) § 1.1, p. 5.[9]

However denominated, a claim for unjust enrichment has broad dimensions. "Unjust enrichment applies wherever justice requires compensation to be given for property or services rendered under a contract, and no remedy is available by an action on the contract. 5 Williston, Contracts (Rev. Ed.) § 1479. A right of recovery under the doctrine of unjust enrichment is essentially equitable, its basis being that in a given situation it is contrary to equity and good conscience for one to retain a benefit which has come to him at the expense of another. *Franks* v. *Lockwood*, 146 Conn. 273, 278, 150 A.2d 215 [1959]; *Schleicher* v. *Schleicher*, 120 Conn. 528, 534, 182 A. 162 [1935]. *Connecticut National Bank* v. *Chapman*, 153 Conn. 393, 399, 216 A.2d 814 [1966]. With no other test than what, under a given set of circumstances, is just or unjust, equitable or inequitable, conscionable or unconscionable, it becomes necessary in any case where the benefit of the doctrine is

---

[9] For a learned exposition of the historical antecedents of a present day action in restitution to recover for benefits conferred in the absence of an enforceable contract, see *Pavey & Matthews Proprietary Ltd.* v. *Paul* (1987) 162 C.L.R. 221 (Australia High Court).

claimed, to examine the circumstances and the conduct of the parties and apply this standard. *Cecio Bros., Inc.* v. *Greenwich,* [supra, 156 Conn. 564–65]." (Internal quotation marks omitted.) *Providence Electric Co.* v. *Sutton Place, Inc.,* 161 Conn. 242, 246, 287 A.2d 379 (1971); *Hartford Whalers Hockey Club* v. *Uniroyal Goodrich Tire Co.,* 231 Conn. 276, 282, 649 A.2d 518 (1994). " 'Unjust enrichment is, consistent with the principles of equity, a broad and flexible remedy. *Cecio Bros., Inc.* v. *Greenwich,* [supra, 564].' " *Hartford Whalers Hockey Club* v. *Uniroyal Goodrich Tire Co.,* supra, 283.

The plaintiff's claim turns, therefore, on whether, in light of the conduct of the parties, the defendants' failure to implement an incentive compensation plan during the period of the plaintiff's employment resulted in the unjust enrichment of the defendants at the expense of the plaintiff. According to the plaintiff, and as the jury apparently found, the defendants' agreement to the concept of incentive compensation obligated them to pay the plaintiff an equitable share of the benefits that they received from his services. Such an equitable share, in the plaintiff's view, may rightfully encompass a claim to a substantial share of profits earned by the defendants two years after the termination of the plaintiff's employment.

### C

We turn first to the defendants' challenge to the amount of the jury verdict. We agree with the defendants that there is no evidentiary support in the record for the jury's award of $710,901.

We recognize that the scope of our review of the trial court's decision to the contrary is limited. Ordinarily, "[t]he decision whether to reduce a jury verdict because it is 'excessive as a matter of law' rests solely within the discretion of the trial court, pursuant to General

Statutes § 52-216a. See, e.g., *Seals* v. *Hickey*, 186 Conn. 337, 348, 441 A.2d 604 (1982). . . . [T]he proper standard of review of a trial court's decision to grant or deny a motion to set aside a verdict as excessive as a matter of law is that of an 'abuse of discretion.' *Oakes* v. *New England Dairies, Inc.*, 219 Conn. 1, 14, 591 A.2d 1261 (1991); *Seals* v. *Hickey*, supra, 348." *Mulligan* v. *Rioux*, 229 Conn. 716, 753, 643 A.2d 1226 (1994), on appeal after remand, 38 Conn. App. 546, 662 A.2d 153 (1995); *Black* v. *Goodwin, Loomis & Britton, Inc.*, 239 Conn. 144, 167, 681 A.2d 293 (1996). Nonetheless, some cases demonstrate an abuse of discretion. The present case is one of them.

The jury's award of $710,901 substantially exceeded the amount of incentive compensation discussed by the parties. Under the plaintiff's offer for a modification of his compensation, starting January 1, 1993, his salary for managing the insurance trust would have increased by $40,000 a year. In addition, he claimed the right to receive incentive pay calculated as a commission of 35 percent to 41 percent of revenues not related to the trust that, for all of 1993, were $136,009. Had he continued to perform services for the defendants for that entire year, his total compensation, in accordance with his own offer, would have been less than $130,000. For the relevant period of five months, that figure drops down further.

The jury's award also exceeded the combined profits of the corporate defendants during the *entire* period of the plaintiff's employment. The plaintiff does not dispute the defendants' assertion that these profits amounted only to $605,366.

Furthermore, the jury's award was more than double $336,540, the amount by which the plaintiff's expert calculated that he had been underpaid for all of the two and one-half years of his employment by the defendants.

Perhaps in response to claims in other counts of the plaintiff's complaint, the expert's calculation assumed that the plaintiff had a right to recover incentive pay throughout.[10] That assumption cannot govern the seventh count because, at best, a five month incentive pay package might have emerged from the parties' conceptual agreement. Prorating the expert's figure over five months rather than twenty-nine months would have reduced the alleged "shortfall" in the plaintiff's total compensation to $58,024.

The plaintiff does not dispute the startling discrepancy between these statistics and the jury award. He argues, nonetheless, that the jury award was justified because, in 1995, according to his expert witness, the value of the defendants' CHAIS operations was more than $2,200,000. That figure, standing alone, cannot justify the damages award in the absence of an evidentiary foundation demonstrating its causal linkage to the plaintiff's personal contributions to the trust two years earlier.

The plaintiff argues that it is inappropriate to limit his damages in restitution to the terms of his own incentive proposal or to the incentive pay calculations presented by his own expert. The expert testimony, according to the plaintiff, "is entirely irrelevant with respect to the unjust enrichment claim." That argument cannot be sustained. It assumes that recovery under a restitutionary claim for unjust enrichment, grounded in equitable principles, contemplates the imposition of greater liability on persons who *rightfully* have exercised their contract rights than on persons acting *in breach* of their obligations under the law of contracts or torts. There is no authority in the law of restitution for so anomalous a result. To the contrary, relief in restitution may well

---

[10] The plaintiff raised such a claim in the count in which he unsuccessfully charged the individual defendants with intentional misrepresentation.

mirror the remedies afforded by contract law. For example, in *Hartford Whalers Hockey Club* v. *Uniroyal Goodrich Tire Co.*, supra, 231 Conn. 281, on which the plaintiff relies, although the court characterized the remedy in terms of the benefit conferred on the defendant, it measured it by the contract price, the precise amount for which the defendant would have been liable if there had been an enforceable contract. See also *McKay* v. *Wiltel Communication Systems, Inc.*, 87 F.3d 970, 977 (8th Cir. 1996) (Missouri law).

In effect, the plaintiff's argument in this case entirely unmoors the plaintiff's remedy from the occasion for his claimed right to recover in restitution, that is to say the alleged agreement to the concept of incentive pay for five months. The trial court properly instructed the jury that the question for them was "whether the plaintiff is entitled to some form of reasonable incentive compensation for his services during [the period of his employment]." If restitution were to be a proper remedy for the plaintiff's loss of that alleged entitlement, it would be more consistent with the aims of restitution to measure the benefit conferred on the defendants, not by their benefit in gross, but by their benefit in having been relieved of the obligation of providing proper compensation to the plaintiff. See 1 G. Palmer, supra, § 1.1, p. 4; see also *Kearns* v. *Andree*, 107 Conn. 181, 187, 139 A. 695 (1928).

The judgment based on the jury's award in this case, therefore, cannot be sustained. Because any right to recover damages under the present circumstances is bound up intimately with the proper definition of the scope of the defendants' substantive liability, the defendants are entitled at least to a new trial on the plaintiff's seventh count.

## D

We turn now to the defendants' claim that they are entitled to a judgment notwithstanding the verdict

because, as a matter of law, the plaintiff has no right whatsoever to pursue a claim for restitution in the face of the acknowledged fact that the parties negotiated an express contract to govern their employment relationship. As the plaintiff acknowledges, whether he has a right to recover in restitution under such circumstances raises an issue that is subject to plenary review by this court. *Aetna Life & Casualty Co.* v. *Bulaong*, 218 Conn. 51, 58, 588 A.2d 138 (1991).

The plaintiff's claim for restitution assumes that there were two sets of binding relationships between the parties: (1) the express contract that governed salary, benefits and other conditions of the plaintiff's employment; and (2) the agreement in concept that the plaintiff should receive some form of incentive pay. According to the defendants, as a matter of public policy, these two relationships cannot coexist.

The defendants argue that, without some infirmity that made the express contract unenforceable, or without some contractual modification that changed its provisions, the contract definitively established the terms of the plaintiff's compensation. The parties were not, of course, precluded from renegotiating any part of the plaintiff's employment package. Their negotiations might have matured into an enforceable contract modification to entitle the plaintiff to additional compensation by way of incentive pay. Until modified, however, according to the defendants, the contract was the exclusive source of the rights of the parties.

In addition to this exclusivity argument, the defendants also maintain that any agreement on their part to the concept of incentive compensation was unenforceable by its own terms. The course of dealings between the parties demonstrates that their agreement to that concept was linked to their shared understanding that further negotiations were required to establish

the terms of such incentive compensation. In other words, the agreement to the concept was at best a conditional agreement, contemplating further discussions in good faith. Those good faith discussions were terminated only upon the receipt of the Allen report.

For these reasons, the defendants maintain that, without any further obligation to the plaintiff, they were entitled to receive the benefits of his services in return for payment to him of the compensation owing to him pursuant to their contract. In count seven of his complaint, the plaintiff did not allege that his employment contract with the defendants was in any respect unenforceable. Likewise, he did not allege that he had performed services other than those contemplated by the contract. Contrary to some of the cases to which he refers,[11] therefore, he has not alleged any basis for the proposition that he conferred extracontractual benefits on the defendants. Although the services he performed were of substantial benefit to the defendants, that is precisely what the plaintiff was hired to do. The defendants contend, therefore, that, as a matter of law, they were not unjustly enriched. We agree.

The defendants' argument finds broad support in American case law. As Professor E. Allan Farnsworth has observed: "It is often said that an express contract between the parties precludes recognition of an implied-in-law contract governing the same subject matter." 1 E. Farnsworth, Contracts (2d Ed. 1998) § 2.20,

---

[11] See, e.g., *McKay* v. *Wiltel Communication Systems, Inc.*, supra, 87 F.3d 977 (restitutionary recovery permitted for services outside scope of employment contract); *Longo* v. *Shore & Reich, Ltd.*, 25 F.3d 94, 98 (2d Cir. 1994) (restitutionary recovery permitted in absence of contract fixing compensation).

p. 176; see Restatement, Restitution §§ 107, 40 (1937);[12] see, e.g., *Brooks* v. *Valley National Bank*, 113 Ariz. 169, 174, 548 P.2d 1166 (1976); *Lowell Perkins Agency, Inc.* v. *Jacobs*, 250 Ark. 952, 959, 469 S.W.2d 89 (1971); *Hedging Concepts, Inc.* v. *First Alliance Mortgage Co.*, 41 Cal. App. 4th 1410, 1419, 49 Cal. Rptr. 2d 191 (1996); *Lord Jeff Knitting Co.* v. *Lacy*, 195 Ga. App. 287, 288, 393 S.E.2d 55 (1990); *DBSI/TRI V* v. *Bender*, 130 Idaho 796, 805, 948 P.2d 151 (1997); *La Throp* v. *Bell Federal Savings & Loan Assn.*, 68 Ill. 2d 375, 391, 370 N.E.2d 188 (1977), cert. denied, 436 U.S. 925, 98 S. Ct. 2818, 56 L. Ed. 2d 768 (1978); *Keystone Carbon Co.* v. *Black*, 599 N.E.2d 213, 216 (Ind. App. 1992) (court cannot supersede contract terms); *Kramer* v. *Fallert*, 628 S.W.2d 671, 675 (Mo. App. 1981); *Maxted* v. *Barrett*, 198 Mont. 81, 87, 643 P.2d 1161 (1982); *Washa* v. *Miller*, 249 Neb. 941, 950, 546 N.W.2d 813 (1996); *Clark-Fitzpatrick, Inc.* v. *Long Island R. Co.*, 70 N.Y.2d 382, 388, 516 N.E.2d 190, 521 N.Y.S.2d 653 (1987); *Zuger* v. *North Dakota Ins. Guaranty Assn.*, 494 N.W.2d 135, 138 (N.D. 1992); *S & M Constructors, Inc.* v. *Columbus*, 70 Ohio St. 2d 69, 71, 434 N.E.2d 1349 (1982); *Paschall's, Inc.* v. *Dozier*, 219 Tenn. 45, 55, 407 S.W.2d 150 (1966); see also *Bright* v. *QSP, Inc.*, 20 F.3d 1300, 1306 (4th Cir. 1994) (applying West Virginia law).

The preclusionary rule has been applied in numerous cases to deny a claim for judicial relief premised on

---

[12] Section 107 (1) of the Restatement of Restitution provides: "A person of full capacity who, pursuant to a contract with another, has performed services or transferred property to the other or otherwise has conferred a benefit upon him, is not entitled to compensation therefor other than in accordance with the terms of such bargain, unless the transaction is rescinded for fraud, mistake, duress, undue influence or illegality, or unless the other has failed to perform his part of the bargain."

Section 40 of the Restatement of Restitution provides in relevant part: "A person who has rendered services to another . . . is entitled to restitution therefor if the services were rendered . . .

"(b) to obtain the performance of an agreement with the other therefor, not operative as a contract, or voidable as a contract . . . ."

incomplete negotiations on the subject of additional compensation for work that falls within the contemplated scope of an existing contract. See, e.g., *Candid Productions* v. *International Skating Union*, 530 F. Sup. 1330, 1338 (S.D.N.Y. 1982) (under New York law, "a contract which fails for indefiniteness cannot support any remedy"); *Engelbrecht* v. *Property Developers, Inc.*, 156 Ind. App. 354, 357–58, 296 N.E.2d 798 (1973) (unconsummated discussions as to additional compensation, without definite agreement, not enforceable in quantum meruit action); *First National Bank* v. *Burton, Parsons & Co.*, 57 Md. App. 437, 452, 470 A.2d 822 (1984) (employee entitled to receive not amount that he deserved but amount for which he contracted); *Folsom* v. *Woodburn*, 100 Nev. 331, 333, 683 P.2d 9 (1984) (employment agreement governs compensation when no agreement on severance payments). Some courts have stressed the importance of safeguarding the autonomy of the parties to determine their own contract relationships without exposure to the risk of a judicial override. See, e.g., *Murray* v. *ABT Associates Inc.*, 18 F.3d 1376, 1378–79 (7th Cir. 1994) Other courts have noted the difficulties of crafting an appropriately constrained judicial remedy. See, e.g., *Bloomgarden* v. *Coyer*, 479 F.2d 201, 211 (D.C. Cir. 1973); *Candid Productions* v. *International Skating Union*, supra, 1333–34.

The plaintiff argues, however, that the principle of preclusion is inapplicable under the circumstances of this case because, in fact, the parties agreed on the idea of additional compensation. Although that agreement, concededly, was too indefinite to be enforceable as a matter of contract law, it was, the plaintiff maintains, sufficiently definite to afford him a remedy for unjust enrichment.

The proposition for which the plaintiff argues rings hollow. In a manner reminiscent of the vagaries of much

criticized nineteenth century pleading practices, he appears to be asserting that the enforceability of a promise of dubious certainty depends upon the nature of the cause of action in which the claim is presented to the court. If there is, indeed, *no* rational basis for a fact finder to determine the incentive pay to which the parties *might* have agreed, how can there be a rational basis for determining how much the defendants were unjustly enriched by *not* having to pay such compensation? If some other calculation is an appropriate measure of benefits, what should that measure be? Professor Palmer rightly urges courts to fashion remedies in restitution that are situation-specific. 1 G. Palmer, supra, § 1.1, p. 4. Perhaps in contexts other than the employer/employee relationship such alternatives may be persuasive, but pinpointing and quantifying even a senior employee's contributions to the profits of a complex enterprise is, as this case demonstrates, too fraught with uncertainty to prove unjust enrichment.[13] If a contract is too vague to be enforceable, it is inappropriate to permit a jury "to estimate capriciously what they might think was a fair percentage of the profits." *Canet* v. *Smith*, 173 App. Div. 241, 243, 159 N.Y.S. 593 (1916).

It is true, as the plaintiff asserts, that there is some scholarly and judicial authority for the proposition that an agreement to pay "some indefinite compensation in

---

[13] If, for example, a contractor has performed extra-contractual services that measurably enhance the market value of real property, the incremental benefit thus conferred may be compensable, as long as the performance was not officious. For a discussion of available remedial alternatives to measure the amount by which a plaintiff may recover for the reasonable value of his services in the absence of an enforceable contract, see *Kearns* v. *Andree*, supra, 107 Conn. 186–87. The effect of the "attempted contract," under such circumstances, is to permit the recovery of compensation measured by "the reasonable value of the services performed, not the amount of benefit which actually accrued from them to him for whom they were performed." Id., 187.

addition to a stated wage . . . might be unenforceable as made" but might nonetheless "rebut any assertion that the specified sum was controlling, and might preserve the right to recover to the extent that the reasonable value [of the services] exceeded the specified sum." 1 S. Williston, Contracts (4th Ed. 1990) § 4.22, p. 514; see also 1 E. Farnsworth, supra, § 3.30, p. 414; see, e.g., *Pillois* v. *Billingsley*, 179 F.2d 205, 207 (2d Cir. 1950) (New York law) ("such sum as you . . . may decide is reasonable"; recovery of $6000 affirmed); *Sabatini* v. *Hensley*, 161 Cal. App. 2d 172, 174, 326 P.2d 622 (1958) ("I starve, you starve; I prosper, you prosper"; recovery of $6500 affirmed); *Bragdon* v. *Shapiro*, 146 Me. 83, 88, 77 A.2d 598 (1951) ("[a] bonus in some amount, if business warranted"; recovery of $1370 affirmed); *Von Reitzenstein* v. *Tomlinson*, 249 N.Y. 60, 64, 162 N.E. 584 (1928) ("an appropriate percentage" in excess of per diem wage; new trial because recovery of $25,000 not proven). In three of those cases, however, the parties' own conduct, over several years, had established a pattern of bonus payments. Under those circumstances, as the court stated in *Von Reitzenstein* v. *Tomlinson*, supra, 67, a plaintiff appropriately might recover "according to the standard of the market, or, in the absence of such a standard, according to such fair approach thereto as may found to be attainable," but not the $25,000 amount that he had been awarded at trial.

The defendants argue that those cases are distinguishable because they involve recovery for indefinite contractual engagements, rather than recovery in restitution in the absence of contractual engagements. That may well be the appropriate manner in which modern law would recast a claim for recovery of an express promise to provide, say, a reasonable incentive package. As Professor Farnsworth has observed, courts increasingly have been willing to flesh out the intended

meaning of indefinite contract language by recourse to trade custom, standard usage and past dealings. 1 E. Farnsworth, supra, § 3.28, p. 397. Article two of the Uniform Commercial Code has provisions to the same effect. See, e.g., General Statutes § 42a-2-208; see also General Statutes § 42a-1-205. As long as there is some objective benchmark against which to measure the scope of the parties' contractual undertaking, or the reasonableness of a party's reliance, it may no longer be necessary to resort to the law of restitution to provide a remedy for the enforcement of indefinite terms contained therein. If there is no such benchmark, it may, correspondingly, be difficult to justify a residual remedy in restitution because it may be difficult to avoid a recovery that is too speculative to be sustainable.

The present case is not the proper occasion for defining the outer limits of the law of restitution in the employment context. Even if room may yet exist for the restitutionary enforcement of indefinite promises to pay incentive compensation in appropriate circumstances, the predicate for such a claim must be an unconditional commitment to pay such compensation. There is a distinction between a promise whose terms are indefinite, and a promise *to consider whether to agree* to a promise whose terms are indefinite. The present case falls in the latter category. The defendants' agreement to the concept of incentive compensation is not the functional equivalent of an agreement to pay reasonable incentive compensation in a fair amount or a reasonable amount. The label of "implied promise," on which the plaintiff premises his restitutionary claim, cannot transform the defendants' agreement to negotiate about incentive compensation into an enforceable agreement to pay incentive compensation. In the absence of any other basis for a claim that the defendants have been unjustly enriched, the plaintiff cannot prevail.

In conclusion, the plaintiff has failed to sustain his claim that the services he rendered during the course of his employment by the defendants resulted in their unjust enrichment. He was bound to perform these services in accordance with his employment contract. The defendants' willingness to *negotiate* about additional compensation in the form of incentive pay did not, in and of itself, modify the terms of the employment contract. In the absence of such a modification, their willingness to negotiate cannot reasonably be made the basis for an implied promise, enforceable by a claim in restitution, to share with the plaintiff an unspecified percentage of the future profits of the business in which the defendants were engaged. Accordingly, the trial court improperly denied the defendants' motion for judgment notwithstanding the verdict with respect to the plaintiff's claim for restitution.

The judgment is reversed and the case is remanded with direction to render judgment for the Association and CHAIS.

In this opinion CALLAHAN, C. J., and PALMER, J., concurred.

MCDONALD, J., with whom BERDON, J., joins, dissenting. I disagree with the majority's conclusion that the defendants are entitled to judgment notwithstanding the verdict on the plaintiff's unjust enrichment claim, and I would reverse and remand for a new trial on the issue of damages.

The majority concludes that the trial court improperly denied the defendants' motion for judgment notwithstanding the verdict on the unjust enrichment claim because the defendants merely had promised the plaintiff that, if the performance of the trust improved, they would *consider* making incentive payments part of the plaintiff's compensation in the future. According to the majority, the defendants did not promise the plaintiff

that they would make such payments upon improvement of the trust's performance.

I agree with the proposition that a mere assurance to consider making incentive payments is not a proper basis for an award of damages under the theory of unjust enrichment. The jury reasonably could have found, however, that the defendants had promised the plaintiff that incentive payments would be forthcoming upon improvement of the trust's performance and that the defendants did not merely promise the plaintiff that they would consider making such payments. The plaintiff testified that, at the time he was hired, the defendants had told him that they "must . . . see the performance before [they could] give [him] the bonus." Furthermore, once the performance of the trust had improved,[1] the defendants did, in fact, enter into negotiations with the plaintiff as to the *amount of the incentive payments* to be made to the plaintiff. That evidence alone permits the conclusion that the defendants had promised the plaintiff that incentive payments would be forthcoming. The fact that the incentive payment proposal developed by the defendants in 1992 was based not only on new business generated by the plaintiff in the future but also on renewals of business that the plaintiff previously had generated for the defendants further supports the conclusion that the defendants had promised the plaintiff that incentive payments would be made.

Moreover, as the majority points out, the trial court instructed the jury that, if it found that the plaintiff had been promised a bonus or incentive compensation in addition to a salary, it could award the plaintiff damages under the theory of unjust enrichment. This court's role

---

[1] In fact, by March 1993, over $6 million of new business had been generated and the number of trust members had increased from just sixty-three to more than 200.

is to consider the evidence in the light most favorable to sustaining the jury's verdict, and we properly can proceed under the assumption that the jury found that the defendants had promised the plaintiff that they would make incentive payments. Cf. *Salaman* v. *Waterbury*, 246 Conn. 298, 304, 717 A.2d 161 (1998).

"A right of recovery under the doctrine of unjust enrichment is essentially equitable, its basis being that in a given situation it is *contrary to equity and good conscience* for one to retain a benefit which has come to him at the expense of another. . . . *Connecticut National Bank* v. *Chapman*, 153 Conn. 393, 399, 216 A.2d 814 [1966]. With no other test than what, under a given set of circumstances, is just or unjust, equitable or inequitable, conscionable or unconscionable, it becomes necessary in any case where the benefit of the doctrine is claimed, to examine the circumstances and the conduct of the parties and apply this standard. . . . *Providence Electric Co.* v. *Sutton Place, Inc.*, 161 Conn. 242, 246, 287 A.2d 379 (1971). . . . Plaintiffs seeking recovery for unjust enrichment must prove (1) that the defendants were benefited, (2) that the defendants unjustly did not pay the plaintiffs for the benefits, and (3) that the failure of payment was to the plaintiffs' detriment. . . . *Hartford Whalers Hockey Club* v. *Uniroyal Goodrich Tire Co.*, 231 Conn. 276, 282–83, 649 A.2d 518 (1994)." (Emphasis added; internal quotation marks omitted.) *Barbara Weisman, Trustee* v. *Kaspar*, 233 Conn. 531, 550, 661 A.2d 530 (1995).

Because the defendants had promised the plaintiff that, upon improvement of the trust's performance, they would provide him with incentive compensation, the jury reasonably could have found that the defendants' failure to provide the plaintiff with incentive compensation was "contrary to equity and good conscience." Id.; accord *Connecticut National Bank* v. *Chapman*, supra,

153 Conn. 399. Consequently, in my view, the defendants are not entitled to judgment notwithstanding the verdict on the plaintiff's unjust enrichment claim.

As to the damages the plaintiff may recover under the theory of unjust enrichment, however, I agree with the majority that, under the circumstances of this case, such damages properly are limited to the amount of reasonable incentive compensation and are not properly measured by the value of the benefits the defendants derived from the plaintiff's services in the course of his employment. See *Kearns* v. *Andree*, 107 Conn. 181, 187, 139 A. 695 (1928); cf. 1 G. Palmer, Law of Restitution (1978) § 1.1, p. 4. Because, in my view, the evidence does not permit the conclusion that the jury award of $701,901 constituted reasonable incentive compensation, the defendants are entitled to a new trial on the plaintiff's unjust enrichment claim.

Accordingly, I respectfully dissent.