**GENERAL ELECTRIC CAPITAL CORPORATION, Plaintiff,**

v.

**DIRECTV, INC., et al., Defendants.**

**DirecTV, Inc., et al., Counterclaimants,**

v.

**General Electric Capital Corporation, Counter-Defendant.**

**Civ. No. 3:97CV1901(PCD).**

United States District Court, D. Connecticut.

Dec. 20, 1999.

James K. Robertson, Jr., Brian T. Henebry, Carmody & Torrance, Waterbury, Jerold S. Solovy, Robert L. Byman, Bar-

bara S. Steiner, James L. Thompson, Terrence J. Truax, Jenner & Block, Chicago, IL, H. Miriam Farber, Peter J. Kozlowski, Salem M. Katsh, Alan S. Goudiss, Joanna B. Shally, Shearman & Sterling, New York City, Anthony M. Fitzgerald, Heena Kapadia, Howard K. Levine, Carmody & Torrance, New Haven, CT, Barbara E. Daniele, General Electric Capital Corp., Stamford, CT, Thomas S. Martin, Stephen J. Marzen, Michael H. Strub, Jr., Stephen M. Simpson, Erik W. Luckau, Roopal R. Shah, Mary Jane Alves, Reginald R. Goeke, Shearman & Sterling, Washington, DC, Wendy L. Hufford, GE Capital Corp., Stamford, CT, for plaintiff, General Electric Capital Corp.

Richard C. Robinson, Gwen P. Weisberg, Sorokin, Gross & Hyde, Hartford, Mary A. Blodgett, John C. Eastman, Melissa D. Ingalls, Marcie Schwartz, James A. Nicholas, Eric C. Liebeler, Kirkland & Ellis, Los Angeles, CA, Jean Reed Haynes, Lee Ann Stevenson, Kirkland & Ellis, New York City, Michael E. Baumann, Kirkland & Ellis, Los Angeles, CA, for defendants DirecTV, Inc., General Motors Corp.

Renee Colette Redman, Hughes, Hubbard & Reed, New York City, for movant Deloitte & Touche.

## RULING ON SUMMARY JUDGMENT MOTIONS

DORSEY, Senior District Judge.

Plaintiff ("GECC") moves for summary judgment pursuant to Fed.R.Civ.Pro. 56 on Counts One, Two, Four, Five, Six, Eight, and Eleven, and for partial summary judgment on Count Nine, of the Second Amended Counterclaim.

Defendants move for 1) partial summary judgment on plaintiff's breach of contract claims relating to accounts written off in July 1999 and those not established according to the Program Agreement (defined below); 2) summary judgment on DTV's breach of contract claim relating to the accounts not established according to the Program Agreement; 3) summary judgment on plaintiff's breach of contract claims for indemnification for "Dealer Fraud"; 4) summary judgment as to plaintiff's and DTV's breach of contract claims because plaintiff did not perform collections services in accordance with its standard procedures, and did not perform any recovery services; and 5) summary judgment on plaintiff's unjust enrichment, quantum meruit, and promissory estoppel claims.

Plaintiff cross-moves for summary adjudication of contract interpretation issues relating to defendants' obligation to indemnify GECC from losses arising from Dealer Fraud.

### I. BACKGROUND

The parties dispute responsibility for losses from a Private Label Consumer Finance Program Agreement (the "Agreement") executed by and between plaintiff and DirecTV ("DTV") concerning consumer financing for satellite dishes for direct broadcast satellite programing. Defendant Hughes Electronics Corporation ("Hughes") guaranteed in writing DTV's Agreement compliance (the "Guaranty").

Under the Agreement, plaintiff purchased credit accounts from authorized dealers, thereby obliging the consumers to GECC for their account balances. DTV was to receive, out of consumers' payments, the monthly finance income from these accounts (i.e., interest). GECC was to retain a percentage of the aggregate outstanding balance on all accounts purchased. Plaintiff alleges that the Program incurred substantial losses due to DTV's aggressive marketing and credit approval stategies as well as to price compression for satellite dishes. It claims that it continued to perform based on DTV's assurances and in reliance upon the Guaranty, but defendants have failed to reimburse GECC for program losses.

Defendants claim that "[o]ver the course of this lending program, [plaintiff] systematically violated the law, breached its contractual commitments to [DTV] and continually lied to and misled [DTV] and Hughes

about [plaintiff's] expertise, its credit scoring abilities, the quality of loan applicants, and the services it allegedly was providing to [DTV]." DTV seeks indemnification for third party lawsuits resulting from plaintiff's alleged fraud and contract breaches, and a $10 million escrow fund that plaintiff allegedly converted unlawfully to its own use. Defendants seek a declaration that they have no 1) liability for loans made by plaintiff in violation of state and federal law nor for loans not covered by or in breach of the Agreement, and 2) indemnification obligation to plaintiff relating to any consumer lawsuits filed against it for its misconduct or for any attorney general investigations of plaintiff's violations of state or federal laws. Defendants also seek to enjoin plaintiff from continued unfair trade practices.

## II. LEGAL STANDARDS

### A. *Standard of Review*

A party moving for summary judgment must establish that there are no genuine issues of material fact in dispute and that it is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *Anderson v. Liberty Lobby*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). In determining whether a genuine issue has been raised, all ambiguities must be resolved and all reasonable inferences be drawn against the moving party. *United States v. Diebold, Inc.*, 369 U.S. 654, 655, 82 S.Ct. 993, 8 L.Ed.2d 176 (1962) *(per curiam)*; *Quinn v. Syracuse Model Neighborhood Corp.*, 613 F.2d 438, 445 (2d Cir.1980).

### B. *Choice of Law*

 A federal court sitting in diversity generally follows the substantive law of the state in which it sits, including the choice of law rules. *See Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496,

61 S.Ct. 1020, 85 L.Ed. 1477 (1941). "Traditionally, Connecticut has followed the 'vested rights' approach to choice of law problems holding that 'in contract actions the laws of the place of contracting governs substantive issues, ... and in tort actions the law of the place of injury governs substantive issues.'" *Economu v. Borg–Warner Corp.*, 652 F.Supp. 1242 (D.Conn.1987) (citing *Schirm v. Auclair*, 597 F.Supp. 202, 205 (D.Conn.1984)). However, where a lex loci analysis "would produce arbitrary, irrational results," the approach set forth in the Restatement (Second) Conflict of Laws will be applied. *See id.* (citing *O'Connor v. O'Connor*, 201 Conn. 632, 650, 519 A.2d 13, 22 (1986) (internal quotation marks omitted)).

 In the pending motions, neither plaintiff nor defendants claim a conflict of law. While they do state that laws of multiple jurisdictions *could* apply (California, Connecticut, Florida), at no point do they argue that the law of a particular jurisdiction *should* apply. Rather, both parties contend that no choice of law analysis is required for resolution of the motions.[1] Nor do they allege any facts that give any indication of one state having a greater interest than another. It is not even alleged where the contract was negotiated or signed. "[W]here application of the laws of two or more jurisdictions with contacts to the litigation reach identical results, thus eliminating any potential conflict of laws," there is a "false conflict" and no choice of law analysis is necessary. *QSP, Inc. v. Aetna Casualty & Surety Co.*, No. 326873, 1998 WL 892997, at *3 (Conn.Super.Dec.8, 1998) (citing *O'Connor*, 201 Conn. at 656 n. 18, 519 A.2d at 25 n. 18). *See also Walzer v. Walzer*, 173 Conn. 62, 76, 376 A.2d 414, 421 (1977) ("When the applicable law of a foreign state is not

---

1. For example, plaintiff states: "Although this Court will need to decide which law applies before it charges the jury, it need not resolve the choice of law issue to decide [this] motion, as the result should not vary under the various laws." Memorandum in Support of Plaintiff's Motion for Summary Judgment, at

12 n. 8. Defendants repeatedly claim that a choice of law analysis is not necessary because it involves a "false conflict." *See, e.g.*, Memorandum of Law Supporting DIRECTV's Motion for Summary Judgment on GECC's Breach of Contract Claims for Indemnification for "Dealer Fraud," at 5 n. 2.

shown to be otherwise, we presume it to be the same as our own"). In consequence, the law of Connecticut, the forum state, will be applied.

## III. DEFENDANTS' MOTIONS

### A. *Breach of Contract Claims Relating to Accounts Written–Off in July 1999*

■ DTV moves for partial summary judgment on GECC's breach of contract claims relating to accounts written off in July 1999, arguing that there are no genuine issues of material fact with respect to this issue and it is entitled to judgment as a matter of law. It claims that "GECC's decision to write off these accounts and cease servicing them in accordance with its obligations under the Program is a clear violation of the ... Agreement and entitles [DTV] to partial summary judgment on GECC's breach of contract claim as to these 22,339 accounts." GECC argues that the Agreement permitted it to write off these accounts, and it was commercially reasonable to do so.

Upon termination of the Agreement for an Event of Default, the parties' rights and obligations survive, subject to exception. Section 7.04 of the Agreement provides that, if GECC terminates the Agreement upon an Event of Default relating to DTV or Hughes, it has "the right to deal with its portfolio of Accounts in any commercially reasonable manner." Section 6.02 provides that "[a]ccounts will be characterized as written off when deemed uncollectible *in GECC's sole discretion,* or, if not sooner, when the account is 180 days delinquent." (Emphasis added.)

GECC terminated the Agreement in 1997 and claims DTV triggered an Event of Default by failing to pay fees and other charges due GECC. GECC told DTV it was writing off the accounts due to allegations of Dealer Fraud, deeming them uncollectible pursuant to Section 6.02. DTV argues that these 22,339 accounts were not uncollectible because the accountholders had been making their payments for over three years, and GECC has no information

that any fraud occurred with respect to these accounts. Moreover, DTV maintains that GECC's decision to stop billing and collecting these accounts was not commercially reasonable.

GECC argues that it had received tens of thousands of complaints of dealer misconduct, through telephone calls, letters, lawsuits, and various state Attorney Generals. It claims that these complaints resembled those of consumers who had received extraordinary judgments against GECC's financing competitors. GECC states that it wrote off these accounts because 1) at least some were procured through dealer fraud; 2) it had no way to determine which were not; and 3) GECC, DTV, and Hughes could be susceptible to enormous punitive damage awards if they continued to collect loans with the knowledge that they might have been procured by fraud. Using a $3 million-per-plaintiff damages award from a competitor's case as a yardstick, GECC argues it was commercially reasonable to write off the $16 million face value of these accounts rather than risk exposure to over $6 billion in damages.

■ DTV's argument that the accounts were collectible as a matter of law ignores the fact that it authorized GECC in the Agreement to make collectibility determinations in its sole discretion. It claims that no reasonable trier of fact could find that these accounts were uncollectible as a matter of law, but this is not the standard under the Agreement. Nor was it the standard that write offs must be commercially reasonable. The Agreement places no constraints on GECC's "sole discretion." Implied provisions such as good faith cannot "override explicit contractual terms." *Grand Light & Supply Co. v. Honeywell, Inc.,* 771 F.2d 672, 679 (2d. Cir.1985). Especially given the sophistication of the contracting parties, it would be inappropriate to modify an express provision of the Agreement.

DTV's motion for partial summary judgment on plaintiff's breach of contract claims relating to these accounts is **denied**.

B. *Breach of Contract Claims Relating to Accounts Not Established According to Agreement*

■ Defendants move for summary judgment 1) on plaintiff's breach of contract claims relating to accounts not established according to Agreement, and 2) for DTV on its breach of contract claim relating to these accounts. They claim they are entitled to summary judgment because GECC breached the Agreement by its 1) inability to determine the creditworthiness of individual applicants; 2) funding of loans without Credit Agreements; and 3) funding of loans for applicants who did not meet the minimum required credit score.

According to plaintiff, when the Program began in 1995, DTV agreed to the use of standard credit criteria, but soon became disappointed in the low approval rates of this "Easy Own" program. At DTV's request, and despite GECC's warning that losses could exceed fifty percent, the parties tested a "100% Approval" program which allowed selected dealers to extend credit to anyone of legal age. Plaintiff claims that, pleased with the increased approval rates and anxious to obtain more subscribers, DTV told GECC to relax credit strategies for its entire dealer base. Thus, in March 1996, the parties began "EZ Approval," a program that issued credit to people with much lower credit scores than in the Easy Own phase and other GECC portfolios.

During the EZ Approval phase, "policy reject logic" was in place, meaning applicants could be denied credit for reasons such as personal bankruptcy history regardless of the score calculated by GECC's algorithm. GECC contends that after one week of the EZ Approval phase, DTV directed GECC to turn off the policy reject logic. Without the policy reject logic, the parties agree that GECC could not accurately forecast losses. Although DTV contends that GECC thus breached the contract because it could not determine in-dividual creditworthiness, GECC argues that its models did adequately rank the risk of applicants, and the losses resulted from DTV's decision to approve a high percentage of the high-risk applicants.

The Agreement required GECC to "determine the creditworthiness of individual credit applicants ... in accordance with established credit criteria and mutually agreed upon credit strategies." Section 3.02(c). In addition to contracting that they would mutually agree upon the credit strategy to be used, the parties:

specifically anticipated that [DTV] will from time to time request market testing of different credit strategies and that GECC will consult and advise [DTV] in connection with such strategies. GECC will use its best efforts to implement such strategies requested by [DTV], it being understood that whether or not GECC has advised against the strategy, if it is implemented, the strategy will be pursued at [DTV's] sole risk.

Section 3.02(b).

It is a disputed question of material fact as to who decided to turn off the policy reject logic. GECC might be liable for turning off the policy unbeknownst to DTV. GECC has produced evidence that the policy was turned off, despite its objection, at the direction of DTV. If DTV requested or agreed to this strategy, it would bear the risk. Summary judgment with respect to these accounts is **denied**.

■ DTV also argues that it is not liable for accounts absent signed credit agreements and applications. It claims that without such documentation, accounts were not established according to the Agreement, and thus DTV is not liable for any fees or losses associated with them. Plaintiff contends such accounts are valid under the Agreement, and defendants remain obliged to indemnify GECC for such accounts' losses.

Article I of the Agreement defines "Account" as, *inter alia*, "any open-end revolving credit account ... purchased from an

Authorized Dealer pursuant to the terms of this Agreement and the applicable Dealer Agreement." Although "Account Documentation" such as credit applications and agreements is found under the Account definition, Article I does not provide that without these documents a credit account does not qualify as an Account.[2] Defendants' motion for summary judgment with respect to these accounts is thus **denied.**

■ Finally, DTV argues that it is not liable for the 3,308 loans GECC made to applicants who did not meet the minimum credit score. DTV explains that in early June 1996, it requested that GECC increase certain minimum credit scores. It claims GECC should have implemented the changes by June 4, 1996 but did not do so until June 12, 1996.[3] GECC contends that there was no provision in the Agreement that specifies a time frame within which GECC must implement a requested credit strategy change.

■ Where, as here, a contract is silent with respect to time, the Court will infer a reasonableness term. *See Martin v. Martin's News Serv., Inc.,* 9 Conn.App. 304, 308, 518 A.2d 951, 954 (1986). Since what constitutes a reasonable period of time is a question of fact, *see id.* at 308, 518 A.2d at 954, summary judgment would be inappropriate.

Defendants' motion for summary judgment on the breach of contract claims relating to accounts not established according to the Agreement is **denied.**

### C. Breach of Contract Claims for Indemnification for "Dealer Fraud"

■ DTV moves for summary judgment on plaintiff's claims for indemnification for "Dealer Fraud." It argues that there is no admissible evidence of such fraud that resulted in any accounts going to a loss; therefore, plaintiff cannot establish an indemnification obligation. Plaintiff cross-moves for summary adjudication of contract interpretation relating to defendants' obligation to indemnify plaintiff from losses arising from Dealer Fraud.

The Agreement requires DTV to indemnify GECC for "Losses" resulting from or arising out of "Dealer Fraud relating to indebtedness." Section 9.02(v). "Dealer Fraud" means "a breach by an Authorized Dealer of any term, representation, warranty, covenant or obligation made or to be performed by an Authorized Dealer under an applicable Dealer Agreement." Art. I. Although DTV was not a signatory to the Dealer Agreements, the form of the agreement to be used was attached to, and incorporated by reference in, the Agreement. Moreover, Authorized Dealers were, by definition, approved by DTV.

In the Dealer Agreements the dealers warranted, among other things, that with respect to each account, 1) they had complied with federal and state laws; 2) they had obtained the necessary licenses, signed credit application, and completed contract; 3) the contract was with a bona fide and competent buyer; 4) the buyer had paid a cash down payment prior to delivery; 5) the merchandise had been duly delivered, installed, and accepted by

**2.** "Account Documentation" is defined as "any and all documentation relating to an Account." In addition to credit applications and agreements, the definition lists numerous other types of documentation, such as charge and credit slips, checks and stubs, credit bureau reports, adverse action information, and change of term notices. If defendants' rationale were followed, an account missing *any* such documentation would not qualify, which would lead to absurd results. Moreover, the Agreement indicates that, if the Authorized Dealers fail to obtain signed applications and agreements, *DTV* is responsible for losses arising therefrom. *See* Part III.C of this Ruling.

**3.** It is undisputed that GECC attempted to implement the changes on June 4 but, due to GECC error, the change did not occur until June 12. DTV contends that, by attempting to implement the change on June 4, GECC essentially admitted that this was the correct date for making the change. There is no legal basis to support this argument.

the buyer; and 6) the merchandise constituted eligible merchandise.

The Dealer Agreement also provides that the dealers will indemnify GECC

against any and all claims, demands, actions or proceedings, liabilities, costs and expenses (including, but not limited to attorney's fees), judgments, damages and awards ... arising out of, connected with or resulting from any act or failure to act on our part regarding any term of this Agreement, including ... any claim, demand, allegation, action, offset, defense or counterclaim which, if true or proven, would constitute a breach.

Ex. A to Agreement, ¶ 11. A breach of this term would constitute Dealer Fraud per Article I of the Agreement, thereby triggering DTV's indemnification obligation.[4]

GECC seeks indemnification for 1) its costs and expenses in connection with thousands of consumer complaints, lawsuits, and investigations relating to the Program and 2) its losses incurred from writing off account balances in response to complaints. Defendants argue that, for each account that it seeks indemnification, GECC must produce admissible evidence identifying the Authorized Dealer, that the Dealer Agreement was breached, and that the breach caused loss. They maintain that evidence of complaints, correspondence, and loss codes is inadmissible hearsay and insufficient to defeat summary judgment.

■ DTV is required to indemnify GECC for losses arising from alleged Dealer Fraud, even if Dealer Fraud did not actually occur or did not cause an account to go to loss. The Agreement defines "Losses" broadly to include "losses, damages, cost and expenses (including without limitation, any reasonable attorneys' fees and court costs), liabilities, claims, settlements, judgments, damages, claims, demands." Art. I. Thus, DTV is liable for costs and expenses GECC in-

curred in connection with the consumer complaints, lawsuits, and investigations. GECC must prove the Losses and that the allegations, if true, would constitute a breach. Written complaints and letters are admissible evidence because they are not offered to establish the truth of the matter asserted, i.e., to show that Dealer Fraud occurred, but only to establish that there were complaints in the nature of Dealer Fraud that resulted in Losses, i.e., costs and expenses.

Defendants' motion for summary judgment with respect to the breach of contract claims regarding indemnification for Dealer Fraud is **denied**. Plaintiff's cross-motion for partial summary adjudication on contract interpretation issues is **granted** consistent with this Ruling.

D. *Contractual Obligations on Collections and Recovery*

■ DTV moves for summary judgment as to plaintiff's breach of contract claim, as well as its own breach of contract claim, because plaintiff "cannot establish the essential element of performance." It argues that plaintiff did not perform collections services in accordance with its standard procedures, and did not perform any recovery services.

Section 3.02 of the Agreement provides that "GECC will provide all credit and collection services required to service the purchased Accounts and Indebtedness, in accordance with its standard operating procedures and terms of this Agreement, including ... recovery and collection services." Collections were to be administered "in a manner consistent with GECC-owned consumer credit account portfolios." Section 3.08. DTV argues that GECC breached its obligations because it failed to 1) use standard collection strategies and procedures, 2) follow its written operating procedures, and 3) provide recovery services.

---

4. Hughes guaranteed "the full and prompt performance" of DTV's obligations with respect to the Program, including its indemnifi-

cation obligations, pursuant to a Guaranty it executed on July 31, 1995.

The parties dispute what strategies and procedures were to be followed and the extent of GECC's compliance. Since these are issues of material fact, summary judgment is not appropriate. The motion for summary judgment on this breach of contract issue is **denied**.

### E. Unjust Enrichment, Quantum Meruit, and Promissory Estoppel

Defendants move for summary judgment on plaintiff's unjust enrichment, quantum meruit, and promissory estoppel claims, arguing that plaintiff cannot assert both the existence of an enforceable contract and a right to recover in quasi-contract. They argue that their fraudulent inducement claims are the only claims that the contract is void; if they prevail on these claims, defendants maintain that plaintiff could not recover in quasi-contract because of the unclean hands doctrine. Plaintiff argues that it seeks *equitable* relief under these doctrines 1) in the event of a finding that it breached the contract and it is thus not entitled to *legal* relief and 2) for any accounts purchased by GECC that are found not to be Accounts under the Agreement.

 The remedy of unjust enrichment is "broad and flexible" and requires examination of the "circumstances and the conduct of the parties." *Meaney v. Connecticut Hospital Ass'n*, 250 Conn. 500, 511, 735 A.2d 813, 820 (1999) (citations and internal quotation marks omitted):

> Unjust enrichment applies wherever justice requires compensation to be given for property or services rendered under a contract, and no remedy is available by an action on the contract.... A right of recovery under the doctrine ... is essentially equitable, its basis being that in a given situation it is contrary to equity and good conscience for one to retain a benefit which has come to him at the expense of another.

*See id.* at 511, 735 A.2d at 820 (citation and internal quotation marks omitted). It is a disputed issue of fact as to whether equity would dictate plaintiff be compensated un-der this doctrine if it is unable to recover under the contract.

 Quantum meruit allows for restitution in situations where no express contract was made. *See Biller Assoc. v. Rte. 156 Realty Co.*, 52 Conn.App. 18, 30, 725 A.2d 398, 405 (1999). Thus, to the extent there is a valid contract, plaintiff cannot recover under this doctrine. Plaintiff may recover, however, for performance outside the express contract, i.e., accounts deemed not within the scope of the Agreement.

 Promissory estoppel is also available to enforce promises outside the scope of the Agreement, provided there was 1) a clear and definite promise that defendants could reasonably expect would induce reliance; and 2) detrimental reliance by plaintiff. *See Chem–Tek, Inc. v. General Motors Corp.*, 816 F.Supp. 123, 131 (D.Conn. 1993).

Defendants' motion for summary judgment on the unjust enrichment, quantum meruit, and promissory estoppel claims is **denied**, consistent with this Ruling.

## IV. PLAINTIFF'S MOTION

### A. Defendants' Fraud Claims

Plaintiff seeks summary judgment on Counts One, Two, Four, and Five of the Counterclaim, arguing that 1) because the alleged misrepresentations relate to contract performance, there is no cause of action separate from a contract claim, and 2) the parties agreed to accept contract damages as a remedy for any misrepresentations that induced entry into the Agreement.

 A party claiming fraud in the inducement or fraudulent misrepresentation or omission can seek rescission, or it can claim damages for breach of contract. *See Texaco, Inc. v. Golart*, 206 Conn. 454, 459 n. 5, 538 A.2d 1017, 1020 n. 5 (1988); *A. Sangivanni & Sons v. F.M. Floryan & Co.*, 158 Conn. 467, 472, 262 A.2d 159, 163 (1969); *Kavarco v. T.J.E., Inc.*, 2 Conn.

**202**

App. 294, 298–99, 478 A.2d 257, 261 (1984). As noted in the June 3, 1999 Ruling, "In Connecticut, 'there is no cause of action for tortious breach of contract separable from a breach of contract claim.'" Dkt. # 328 at 5 (citing *Connecticut Envtl. Assoc. Inc. v. Connecticut Resources Recovery Auth.,* No. CV 960393991, 1997 WL 435871, at *1 (Conn.Super. July 23, 1997)).

■■■ Defendants' fraud in the inducement claims (Counts One and Two) are valid as they seek rescission or, alternatively, damages for breach of contract. Damages for breach of contract would place the injured party in the same position as it would have been in if the contract had been performed. *See Argentinis v. Gould,* 219 Conn. 151, 157, 592 A.2d 378, 381 (1991). The injured party generally cannot collect damages greater than the amount required for that purpose. *See id.* at 157–58, 592 A.2d at 381. Accordingly, punitive damages are not ordinary available in contract actions, unless malicious, willful or reckless conduct is alleged. *See City of Hartford v. International Ass'n of Firefighters,* 49 Conn.App. 805, 817, 717 A.2d 258, 266 (1998). "[T]he flavor of the basic requirement to justify an award of punitive damages is described in terms of wanton and malicious injury, evil motive and violence." *Venturi v. Savitt, Inc.,* 191 Conn. 588, 592, 468 A.2d 933, 935 (1983); *see Triangle Sheet Metal Works, Inc. v. Silver,* 154 Conn. 116, 128, 222 A.2d 220, 226 (1966); *Ames v. Sears, Roebuck & Co.,* 8 Conn.App. 642, 655, 514 A.2d 352, 359 (1986) ("As a general rule, punitive damages may be awarded only for outrageous conduct").

Defendants' fraud in the inducement claims, which are essentially breach of contractual warranty claims, do not allege conduct sufficiently outrageous to warrant punitive damages. Plaintiffs' motion for summary judgment on Counts One and Two of the Counterclaim is **denied** except that punitive damages shall not be available as a remedy.

■■■ Defendants' fraudulent misrepresentation/omission claims (Counts Four and Five) allege that plaintiff fraudulently induced defendants to continue with the Program. In other words, plaintiff allegedly misrepresented or led defendants to believe that they were performing the contract in order to induce defendants to continue their contractual obligations. Most of the alleged misrepresentations mirror those in Counts One and Two.

Defendants cite no authority for a cause of action for fraudulent inducement to continue performing a contract. Counts Four and Five are nothing more than breach of contract allegations or duplicative of Counts One and Two. Plaintiff's motion for summary judgment on these counts is **granted**.

**B. Defendants' Claim for Indemnification for Legal Violations**

■■ DTV seeks a declaration that GECC is obligated to indemnify it for the cost of defending consumer actions in which consumers have alleged violations of the Federal Truth in Lending Act ("TILA") and the Equal Credit Opportunity Act ("ECOA").

Section 9.01 of the Agreement requires GECC to indemnify DTV

> from and against any Losses resulting from or arising out of (i) any breach of any warranty, covenant or agreement or any misrepresentation by GECC under this Agreement and (ii) the negligent act or omission of GECC ... in the performance of [its] duties under this Agreement, or (iii) non-compliance of advertising guidelines distributed by GECC or advertising approved in writing by GECC, to the extent the alleged non-compliance ... is based upon non-compliance with applicable consumer credit laws or regulations.

The Agreement also requires GECC to indemnify DTV "from and against any Losses resulting from or arising out of the lack of compliance with federal, state, local laws and regulations related to the Account Documentation and any procedures related thereto." Section 3 01.

Defendants point to nothing in the Agreement that requires indemnification for defending or settling consumer actions absent breach, negligence, or non-compliance by GECC. Unlike DTV's indemnification obligations, discussed above, GECC is not liable for *alleged* violations, only *actual* violations. Defendants seek to avoid summary judgment by arguing that there are disputed issues of fact concerning GECC's compliance with TILA and ECOA. However, it is not enough that GECC arguably did not comply; there must have been Losses arising from or related to their lack of compliance. Defendants have not established, or even alleged, that they have incurred such Losses. There is no evidence of any finding of liability on the part of DTV, and it would not be appropriate for the Court to examine the merits of the pending lawsuits as inconsistent findings could result. In consequence, this claim is not ripe.

Plaintiff's motion for summary judgment on Count Eight of the Counterclaim is **granted**.

### C. *Defendants' Declaratory Claim for Indemnification and Exoneration*

DTV seeks a declaration that it be exonerated from its "suretyship obligations." Plaintiff seeks disposal of the claim in Count Nine for exoneration for accounts that were allegedly closed-end loans. Defendants argue that such loans do not qualify as "Accounts" under the Agreement. Plaintiff contends that no closed-end credit was extended and, if it was, the legal fault lies with DTV. Defendants also argue that summary judgment is not appropriate because there are disputed issues of material fact as to GECC's compliance with TILA.

Under TILA, an open-end credit plan is "a plan under which the creditor reasonably contemplates repeated transactions, which prescribes the terms of such transactions, and which provides for a finance charge which may be computed from time to time on the outstanding unpaid balance." 15 U.S.C. § 1602(i).

GECC, with respect to the Program, is an assignee not a creditor. *See Mayfield v. General Electric Capital Corp.*, No. 97 CIV 2786, 1999 WL 182586, at *3 (S.D.N.Y. Mar.31, 1999). As such, it can only be held liable under TILA for a violation "'apparent on the face of the disclosure statement.'" *Id.* (citing 15 U.S.C. § 1641(a)). Even if aware that some dealers were extending closed-end credit, plaintiff would not, as an assignee, be liable.[5] *See id.* at *3–*4. Defendants admit that GECC's documentation was proper for open-end credit accounts. In consequence, there are no disputed issues as to GECC's compliance with TILA.

With respect to DTV's claim for exoneration because closed-end accounts are not Accounts under the Agreement, DTV fails to establish why the onus should fall on plaintiff. It is undisputed that the accounts under the Agreement were to be open-end revolving credit accounts. However, to the extent they were not, this would constitute Dealer Fraud: The Authorized Dealers warranted compliance with federal and state consumer credit laws; if they extended closed-end credit despite the fact that the documentation was for open-end credit, that would be a legal and contractual violation. Since DTV must indemnify GECC for Dealer Fraud, it cannot be exonerated for allegedly closed-end loans as a matter of law.

The motion for partial summary adjudication on Counterclaim Count Nine is **granted.**

### D. *Defendants' Conversion Claim*

Count Eleven of the Counterclaim alleges that, in July 1996, DTV paid GECC $10 million to be deposited into an interest-bearing escrow account. GECC allegedly transferred these funds into its corporate treasury and, in February 1999,

---

5. "Holding an assignee liable under these circumstances would eliminate the distinction between assignee and creditor liability that is clearly intended by 15 U.S.C. § 1641(a)." *Mayfield,* 1999 WL 182586, at *4.

informed DTV that it had applied the money as partial payment for losses and/or expenses resulting from the Program. DTV claims that, by applying these funds for losses and expenses that are in dispute, GECC unlawfully converted the funds to its own use.

Plaintiff seeks summary judgment on this claim, arguing that 1) there is no evidence of any escrow agreement; 2) there is no evidence that GECC was not authorized to use the funds; and 3) the $40 million that DTV states it has already paid GECC for losses and expenses includes this $10 million, thereby constituting an admission that it was "payment" and not "conversion." GECC argues that DTV should be estopped from claiming conversion since it has benefited from its treatment of the funds as payment.

Although neither plaintiff nor defendants has produced an escrow agreement, it is undisputed that $10 million was held in reserve for payment of losses/expenses as provided by the Agreement. Plaintiff denies that this money was "escrowed" for any purpose. Defendants argue that a fax sent to plaintiff demonstrates that GECC was not authorized to use the funds. The fax from DTV stated, in relevant part, "We want to process GECC's monthly bills in accordance with DIRECTV's standard operating procedures. We do *not* want to deduct bills from the $10 million reserve."

It is a disputed issue of material fact whether 1) the funds were in escrow; 2) GECC was permitted to use the funds; and 3) DTV benefited by classifying the funds as "payment" and thus should be estopped from reclassifying them. Plaintiff's motion for summary judgment on Count Eleven of the Counterclaim is **denied**.

### E. *Defendants' Statutory Unfair Trade Practices Claim*

Defendants seek restitution and an injunction for GECC's alleged "unlawful, unfair, and fraudulent business acts and practices with respect to its implementation and administration of the Program." They allege numerous breaches and misrepresentations with respect to the Agreement. Plaintiff seeks summary judgment, arguing that 1) this is not a proper case for an unfair trade practices claim and 2) the requested relief is unavailable.

 The Connecticut Unfair Trade Practices Act ("CUTPA") prohibits persons from engaging "in unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." Conn. Gen.Stat. § 42–110b(a). Whether a practice is unfair is based on: 1) whether the practice offends public policy; 2) whether it is immoral, unethical, oppressive, or unscrupulous; and 3) whether it causes substantial injury to consumers, competitors, or other businessmen. *See Boulevard Assoc. v. Sovereign Hotels, Inc.,* 72 F.3d 1029, 1038 (2d Cir.1995). A breach of contract claim generally does not constitute a CUTPA violation. *See id.*

 Defendants argue that plaintiff violated CUTPA through fraudulent inducement and violation of TILA and ECOA. As discussed above, there are no genuine issues of material fact as to plaintiff's compliance with TILA. Defendants claim plaintiff violated ECOA by using an applicant's age as a predictive variable in a credit scoring system that was not "demonstrably and statistically sound." Defendants have been held to lack standing to bring an ECOA, as well as a TILA, action against plaintiff. It would be incongruous to allow defendants to recover under another statute for legal violations of which they were not victims. They cannot do indirectly what they cannot do directly.

 As for the fraudulent inducement claim, the alleged misrepresentations so closely parallel the breach of contract claims that they are not sufficient to give rise to a CUTPA claim as a matter of law.[6]

**6.** The Agreement has extensive representations and warranties, specifically listing the

inducements to entering the contract.

This determination is based partly on the recognition that CUTPA was not designed to give wealthy, highly sophisticated corporations yet one more cause of action for their battle chests. While such companies are not excluded from CUTPA's reach, their status cannot be ignored when analyzing whether a practice is unfair.

Plaintiff's motion for summary judgment on Count Six of the Counterclaim is granted.

## V. CONCLUSION

The following motions are hereby **denied**: 1) defendants' motion for partial summary judgment on plaintiff's breach of contract claims relating to accounts written-off in July 1999 (doc. 358); 2) defendants' motion for summary judgment on the breach of contract claims relating to the accounts not established according to the Agreement (doc. 336); 3) defendants' motion for summary judgment on plaintiff's breach of contract claims for indemnification for "Dealer Fraud" (doc. 340); 4) defendants' motion for summary judgment as to plaintiff's and DTV's breach of contract claims because plaintiff did not perform collections services in accordance with its standard procedures, and did not perform any recovery services (doc. 348); and 5) defendants' motion for summary judgment on plaintiff's unjust enrichment, quantum meruit, and promissory estoppel claims (doc. 344).

Plaintiff's motion for summary judgment (doc. 362) is **granted** only with respect to Counts Four, Five, Six, Eight, and Nine. Its cross-motion for partial summary adjudication as to contract interpretation issues (doc. 369) is **granted**.

SO ORDERED.