[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
This case is a mechanic's lien foreclosure brought by the plaintiff, Richmond Ready Mix, Inc., for work performed at the home of the defendants, James Coney and Rosemary Coney, from July 30, 1997 to January 9, 1998. The property is located at 131 Cross Winds Drive, Groton, Connecticut. The plaintiff has also brought a claim for unjust enrichment. The plaintiff in the case was a concrete subcontractor for the general contractor, Peter Panciera. The plaintiff's services and materials included the provision of concrete for the construction of the foundation and other portions of the defendants' new home. The plaintiff billed the general contractor for his work but was not paid. The plaintiff claims the reasonable and actual value of the plaintiff's work and materials is $8,552.52. The plaintiff filed a mechanic's lien against the defendants' property on March 5, 1998.
The defendants filed a special defense claiming that the sums paid to the general contractor prior to his termination plus sums expended to complete the construction exceed the original contract price. The defendants further claim that the material and services provided by the plaintiff were ordered by the general contractor and not by the defendant.
The first question in the case is whether or not the plaintiff has filed a valid mechanic's lien on the property. A mechanic's lien is a creature of statute, C.G.S. § 49-33 et seq. The statute states "if any person has a claim for more than $10.00 for materials furnished or services rendered in the construction . . . of any building. and the claim is by virtue of an agreement with or by consent of the owner of land upon which the building is being erected . . . the building, with the land on which it stands . . . is subject to the payment of the claim." C.G.S. § 49-33 (a). It is the plaintiff's burden of proof to establish entitlement to foreclose its lien. Peck v. Brush, 89 Conn. 554
(1915). The burden of proof is on the subcontractor in a probable cause hearing under C.G.S. § 49-35.
The plaintiff purports to prove a valid lien by showing a series of invoices dated from June 30, 1997 to January 15, 1998. The invoices correlated to delivery tickets that were appended to each of the invoices. The plaintiff's president, Matthew Coty, testified that the CT Page 13820 delivery tickets were generated with each delivery of the concrete. The court finds that the delivery tickets were adequate proof as to the date of the last delivery. The plaintiff's claim that the general contractor, Peter Panciera, who is not a party to this action had a contract with him to pay for the concrete. He acknowledges that there was no contract with the defendants.
It is the defendants claim that the delivery tickets are not sufficient to show the delivery dates at the plaintiff's residence because the plaintiff possessed no documents establishing these specific concrete deliveries were made to Coneys' home. Mr. Coty also acknowledged that he was not present at the Coneys' home January 9, 1998, when the last delivery was purportedly made. The mechanic's lien was filed March 5, 1998. The defendants claim that the lien, according to the statute must be filed within ninety days of the last delivery. The defendants claim that there is no evidence as to the date of the last delivery beyond the delivery date of November 18, 1997. The defendants claim that Mr. Coty testified that the dates upon which Richmond claims to have provided materials was determined by a telephone conversation between himself and an individual from Quality Concrete Construction, the subcontractor, who did the onsite concrete work. However, this communication was neither documented nor was the individual with whom Coty had this conversation called by the plaintiff as a witness. Coty also testified that the payment policy set forth by Richmond was at the time that payment for concrete materials provided was due within thirty days of its delivery. He testified that this period was Richmond's standard practice and that it was the period which applied to Panciera.
A review of the testimony in the case persuades the court that the last delivery date was, as stated by Mr. Coty, January 8, 1998. With respect to the issue of the timely filing of the mechanic's lien, the court finds that the lien was filed in a timely manner.
The issue the court now turns its attention to is the special defense which, if proven, excuses the defendants' obligation under the lien. If the defendant has proven whether sums expended in good faith to the original general contractor plus expenditures reasonably incurred to complete the construction after the original general contractor was terminated, if totaling an amount greater than the original contract price excuses the defendants' obligation under the lien. The court has carefully reviewed the financial statements provided both by defendant and plaintiff in their brief. The court rinds that the original contract for the construction of the house was in the amount of $352,353.58. The court accepts the evidence as presented by the Coneys that they paid directly to Panciera a total amount of $225,100.00. They also paid subcontractors, prior to the termination of Panciera, but at his CT Page 13821 suggestion and with the agreement and consent of Panciera, direct payments to some of the contractors and material vendors. The court finds payment made in this manner, prior to Panciera's termination, as the builder on February 12, 1998, totaled $21,241.11; to vendors and to subcontractor vendors after Panciera's termination $106,012.47. The court thus finds that the evidence introduced establishes a total expenditure by the Coneys to complete their new home as follows: 1) direct payment to Panciera $225,100.00; 2) payments directly to vendors/subcontractors prior to Panciera's termination $21,241.11; and 3) Coney payments to vendors/subcontractors after Panciera's termination $106,012.47 for a grand total of $352,335.58.
The court finds that Mr. Coney established by clear and convincing evidence that he and his wife had expended a total of $352,253.58 in completion of their house. He also clearly and convincingly testified that there were some expenditures that they made that were not within the scope of their contract with the builder and these were carefully delineated in the testimony and in the defendants' brief. The court finds that those expenditures total $25,518.93. Thus, the grand total amounted to $326,734.65. This is as compared to the contract amount with Panciera as revised by the change order of $290,740.00.
With respect to the claim for unjust enrichment, as claimed by the plaintiff, the court finds that the law regarding that is that a right of recovery under the doctrine of unjust enrichment is essentially equitable, its basis being that, in a given situation, it is contrary to equity and good conscience for one to retain the benefit which has come to him at the expense of another. With no other test than what, under a given set of circumstances, is just or unjust, equitable or inequitable, conscionable or unconscionable, it becomes necessary in any case where the benefits of the doctrine is claimed to examine the circumstances and conduct of the parties and apply this standard. Meaney v. ConnecticutHospital Assn., Inc., 250 Conn. 500 (1999).
 Conclusion
The court finds that the claim being brought here is first, foreclosure of mechanic's lien, second, unjust enrichment. The court denies the plaintiff's claims for the reason that under the mechanic's lien provision which is strictly controlled by statute, the plaintiff's claim is barred in that the total of the Coneys' good faith and reasonable payments to build a home exceed the amount of the builders contract. The mechanic's lien laws expressly limit the right of recovery of subcontractors who file mechanic's liens. Specifically, C.G.S. § 49-33 imposes a limitation of this right where the owner expends more in good faith payments to complete the home than the contract the owner had with the CT Page 13822 original builder. Accordingly, in a situation where the builder defaults on his contract, as in this case, if the owner expends more to complete his home than the contract price he had with the builder, there is no lienable fund to satisfy the subcontractor's foreclosure action. W.B.Gleney Co. v. Bianco, 27 Conn. App. 199, 201 (1992). There is no evidence in this case to support the conclusion that any of the Coneys' payments were made in bad faith. While numerous parties, the plaintiff included, knew that subcontractors were not being paid, the Coneys did not become aware of this until shortly before they terminated with Panciera. Similarly, Mr. Coney testified that payments made to Panciera were only made after work called for on the progress payment schedule was completed. There is no evidence to support the conclusion of bad faith payments. The amounts the Coneys expended in total still exceed the contract price by a wide margin. The defendants have established by clear and convincing evidence that the statutory defense applies in this case. The court also finds they were not unjustly enriched by the concrete provided by the plaintiff. There is no question in this case, unfortunately, that both the Coneys and Richmond were the victims of an unscrupulous builder who took advantage of both. The determination of where the equities lie in these types of cases if a difficult one, however, the court has reviewed carefully the factual matters bearing on the case and must conclude in favor of the defendant. Accordingly, the relief sought by the plaintiff is hereby denied. The court finds that although the plaintiff complied with the mechanic's lien law and filed a timely claim, the Coneys have plead and proven a bonafide special defense, that is they spent more to build their home than their contract with Panciera required. Finally, the plaintiff has failed to prove one of the essential elements necessary to prove unjust enrichment.
Accordingly, judgment enters for the defendant.
D. Michael Hurley, Judge Trial Referee