## JOHN KELLEY *v.* FIVE S GROUP, LLC
## (AC 33184)

Gruendel, Robinson and Peters, Js.

Argued March 14—officially released June 5, 2012

*Michael D. O'Connell*, with whom, on the brief, was *Robert B. Flynn*, for the appellant (plaintiff).

*David S. Hoopes*, with whom was *Peter J. Royer*, for the appellee (defendant).

*Opinion*

PETERS, J. Recovery in restitution "is based upon the principle that one should not be permitted unjustly to enrich himself at the expense of another but should be required to make restitution of or for property received, retained or appropriated. . . . The question is: Did [the party liable], to the detriment of someone else, obtain something of value to which [he] was not entitled?" (Internal quotation marks omitted.) *New Hartford* v. *Connecticut Resources Recovery Authority*, 291 Conn. 433, 452, 970 A.2d 592 (2009); see also 1 Restatement (Third), Restitution and Unjust Enrichment § 1, p. 3 (2011) ("[a] person who is unjustly enriched at the expense of another is subject to liability in restitution"). The dispositive issue in this appeal is whether the trial court properly determined that the plaintiff failed to establish that his employment contract unjustly failed to compensate him for his work in designing and constructing a golf course for the defendant. We affirm the judgment of the trial court.

On June 25, 2010, the plaintiff, John Kelley, filed a two count amended complaint against the defendant, Five S Group, LLC, alleging claims for reformation of the parties' contract and for restitution pursuant to the doctrine of unjust enrichment. The defendant denied its liability and asserted various affirmative defenses, including laches and estoppel. After a court trial, the court rendered judgment in favor of the defendant on both counts of the plaintiff's complaint[1] and the defendant's special defenses. The plaintiff's appeal challenges the propriety of all these adverse rulings, with the exception of the court's decision on his claim for reformation.

In the court's February 1, 2011 memorandum of decision, it made extensive findings of fact that the plaintiff does not contest on appeal. The defendant[2] is a Connecticut limited liability company comprised of members of the Shepard family, which owns about 200 acres of undeveloped land in South Windsor and East Windsor. The plaintiff is an experienced developer of golf courses. In October, 1995, the plaintiff and Jean "Kip" Shepard entered into an informal oral agreement for the plaintiff's design, construction and operation of a golf course on property owned by the defendant. The informal agreement contemplated a thirty year joint venture in which the defendant would contribute the land at a cost of $1 per year and the plaintiff would oversee the construction and operation of the golf course for no fee. For the duration of the thirty year lease, the defendant and the plaintiff would divide the operating costs of the golf course and its profits. At the termination of the lease, the plaintiff would be paid $1.5

[1] On September 20, 2010, with the consent of the parties, the court ordered that the trial on the plaintiff's claim of unjust enrichment be bifurcated between liability and damages. The court rendered judgment on the issue of liability.

[2] Five S Group, LLC, is comprised of members of the Shepard family, including Charles B. Shepard and Jean "Kip" Shepard.

million and the defendant would own the golf course outright. The plaintiff and Kip Shepard also discussed the possibility that, to obtain the approval of other members of the Shepard family for the golf course proposal, the defendant would draw down $250,000 from the $2 million mortgage that was to be taken out on the defendant's land.

This informal agreement thereafter was the subject of further extended discussions between the plaintiff, Kip Shepard and John E. D'Amico, an attorney retained by the parties. During these discussions, Kip Shepard indicated clearly that he was no longer willing to burden his family with a large payout to the plaintiff at the end of the leasehold. The plaintiff agreed, but indicated that he wanted, in some other way, to receive the $1.5 million for his work in planning and constructing the golf course. Despite D'Amico's efforts, the parties were unable to agree on the terms of an incentive payment plan or an annuity as an alternative to the $1.5 million payout. Although fully apprised of these various proposals,[3] the plaintiff, by his own admission, paid little attention to the details of the parties' agreement because he was preoccupied with supervising the construction of the golf course. By May, 1996, Kip Shepard believed that the compensation issue had been resolved. It was his understanding that the plaintiff would give up his claim to the $1.5 million payout at the end of the leasehold and that the defendant would give up the Shepard family's claim to the $250,000 that was to have been paid out of the mortgage.

On June 11, 1996, in accordance with Kip Shepard's understanding of the parties' agreement, the relationship between the parties was formalized in three documents.[4] The first document was a ground lease for the

---

[3] The court found that D'Amico sent drafts of the final proposed operating and management agreements to the plaintiff and Kip Shepard in April and May, 1996.

[4] The bank issuing the mortgage required the documents to be signed before closing on the loan. D'Amico did not attend the closing. Kip Shepard

golf course, in which the defendant leased the property to South Windsor Golf Course, LLC,[5] for a term of thirty years at $1 per year. The second document was an operating agreement between the plaintiff and the defendant providing that each party had a 50 percent interest in South Windsor Golf Course, LLC. The third document was a management services agreement between South Windsor Golf Course, LLC, and the plaintiff, which included a provision that the plaintiff would not receive any additional compensation for his development or management of the golf course.[6]

At the closing, the plaintiff indicated that he had not read the documents, but did not request time to do so.[7] Kip Shepard described the documents to the plaintiff as memorializing a fifty-fifty deal because the plaintiff and the defendant would share both the costs and the profits of the golf course. Kip Shepard was aware of the fact that the documents did not contain a provision contemplating an incentive agreement or buyout for the plaintiff.

On June 12, 1996, to replace a prior construction mortgage, the parties signed a construction to permanent mortgage note on the golf course property in the amount of $2.4 million, payable to the Savings Bank of

arranged for representation by a different attorney to finalize the financing of the project.

[5] Prior to the closing, on February 16, 1996, the plaintiff and Kip Shepard executed articles of organization for South Windsor Golf Course, LLC, an entity created on their behalf by D'Amico.

[6] Paragraph 2.a of the management services agreement provides: "The services described in this [a]greement shall be performed by [the plaintiff] and/or [the plaintiff's] heirs, successors and legal representatives as provided in the [o]perating [a]greement. [*The plaintiff*] *shall be entitled to no additional compensation under this* [*a*]*greement,* it being understood and agreed by the parties hereto that this [a]greement is intended to more fully set forth [the plaintiff's] obligations under the [o]perating [a]greement without compensation." (Emphasis added.)

[7] The plaintiff testified that the closing had lasted between two and one-half and three hours.

Manchester. On July 11, 1997, shortly after the opening of the golf course, the parties increased the amount borrowed to $3 million.

The plaintiff has managed the South Windsor golf course since it opened in June, 1997, and also has acted as general manager of its restaurant. Since the opening, each party has received approximately $100,000 per year in profits from operation of the golf course. Approximately three years after the opening, while negotiating another golf course construction project with the defendant, the plaintiff discovered that there was no provision for a $1.5 million payout in the South Windsor golf course documents. When the plaintiff inquired about the omission, Kip Shepard informed him that it had been taken out.

In its ruling rejecting the plaintiff's claim for reformation, the court held that the plaintiff failed to establish that, due to the parties' mutual mistake, the documents failed to include a provision entitling the plaintiff to payment of $1.5 million upon expiration of the thirty year lease.[8] Subsequently, in addressing the factual underpinnings for the plaintiff's claim of unjust enrichment, the court found that the plaintiff's contribution of his services in designing and constructing the golf course was balanced by the defendant's contributions of approximately 162 acres of land, in its execution of a thirty year lease of that property to South Windsor Golf Course, LLC, at $1 per year and in its subjection of that property to a multimillion dollar mortgage lien. The court noted that the plaintiff and individual members of the defendant each had undertaken personal liability by signing the mortgage note and found that the plaintiff had presented no evidence that, at the end

---

[8] The plaintiff does not appeal from the court's judgment in favor of the defendant on his claim for reformation and has not challenged the propriety of the court's findings related to this ruling.

of the leasehold, the golf course would continue to be profitable. Rejecting the plaintiff's claim of unjust enrichment, the court concluded that the plaintiff had not made a factual showing that the defendant was unjustly or unfairly benefited by its failure to commit itself to make any payments to the plaintiff beyond those contemplated in the documents.

I

The plaintiff's appeal challenges, on three grounds, the validity of the court's decision that he failed to prove a claim of unjust enrichment.[9] Specifically, the plaintiff claims that the court improperly found that: (1) the defendant's contribution to the development of the golf course was equivalent to his own contribution; (2) he had agreed to build the golf course for free; and (3) he had failed to prove what the property would be worth at the end of the leasehold. We are not persuaded by these claims of error.

"Unjust enrichment applies wherever justice requires compensation to be given for property or services rendered under a contract, and no remedy is available by an action on the contract. . . . A right of recovery under the doctrine of unjust enrichment is essentially equitable, its basis being that in a given situation it is contrary to equity and good conscience for one to retain a benefit which has come to him at the expense of another. . . . With no other test than what, under a given set of circumstances, is just or unjust, equitable or inequitable, conscionable or unconscionable, it becomes necessary in any case where the benefit of the doctrine is claimed, to examine the circumstances

---

[9] The plaintiff also argues that the court improperly concluded that his unjust enrichment claim was barred by the defendant's special defenses of laches, equitable estoppel, the parol evidence rule, waiver and the statute of limitations. Because we conclude that the court properly rendered judgment in favor of the defendant on the unjust enrichment claim, we need not consider the merits of this argument.

and the conduct of the parties and apply this standard. . . . Plaintiffs seeking recovery for unjust enrichment must prove (1) that the defendants were benefited, (2) that the defendants unjustly did not pay the plaintiffs for the benefits, and (3) that the failure of payment was to the plaintiffs' detriment. . . .

"[T]he determinations of whether a particular failure to pay was unjust and whether the defendant was benefited are essentially factual findings for the trial court that are subject only to a limited scope of review on appeal. . . . Those findings must stand, therefore, unless they are clearly erroneous or involve an abuse of discretion." (Citations omitted; internal quotation marks omitted.) *Hartford Whalers Hockey Club* v. *Uniroyal Goodrich Tire Co.*, 231 Conn. 276, 282–83, 649 A.2d 518 (1994).

## A

The plaintiff's first claim is that the court improperly found that the defendant's contribution to the South Windsor golf course was adequate to offset the plaintiff's contributions and improvements to the property. This claim founders for lack of a factual foundation. Facially, the parties' contracts reflect an understanding that the defendant's contribution of its land for the construction and operation of the golf course adequately matched the plaintiff's contribution of his services. To prevail on his claim, the plaintiff had the burden of proving that this perceived equivalence was inaccurate, thereby conferring an unjust benefit on the defendant. Surprisingly, the record contains no evidence, and therefore no finding, either of the market value of the defendant's land or of the market value of the plaintiff's services. In the absence of such evidence, the plaintiff cannot prevail on this claim of error.

## B

The plaintiff's second claim is that the court improperly found that he had agreed to build the golf course

for free. The plaintiff maintains that he did not consent to contribute design and construction services without receiving the right to a payout in return. This claim seems to us to be an inaccurate representation of the defendant's characterization of the business relationship between the parties. The defendant never suggested that the plaintiff was not entitled to compensation for his work. Instead, it has maintained that, in light of its contribution of the land, the plaintiff would be adequately compensated for his contribution in planning and constructing the golf course by his fifty-fifty share of the costs and profits of the golf course. Without a finding that this characterization of the parties' contracts was inaccurate, the plaintiff has failed to establish a factual basis for his charge that the defendant unjustly did not pay the plaintiff for his work.

C

Finally, the plaintiff claims that the court abused its discretion by "withholding relief based on uncertainty about the future value" of the South Windsor golf course. The plaintiff has not pointed to any evidence of record that would demonstrate that the court improperly found that the income to be generated by the golf course at the expiration of the thirty year lease was speculative at best. If there are statistics about the earnings records of aging golf courses, it was the plaintiff's burden to present them. As best we can tell from the evidence recited by the plaintiff, he has failed to make the requisite showing.

In light of the record as a whole, we agree with the defendant that the court properly found that the plaintiff failed to establish that the failure of the defendant to commit itself to making any additional payments to him was "unjust or unfairly benefited the defendant." We are mindful of our Supreme Court's instruction that appellate review of the trial court's conclusion that the

defendant was not unjustly enriched "is deferential. The court's determinations of whether a particular failure to pay was unjust and whether the defendant was benefited are essentially factual findings . . . that are subject only to a limited scope of review on appeal. . . . Those findings must stand, therefore, unless they are clearly erroneous or involve an abuse of discretion. . . . This limited scope of review is consistent with the general proposition that equitable determinations that depend on the balancing of many factors are committed to the sound discretion of the trial court." (Internal quotation marks omitted.) *New Hartford* v. *Connecticut Resources Recovery Authority*, supra, 291 Conn. 452. We are persuaded that, in this case, the plaintiff has failed to establish that the court's rejection of his claim for restitution was an abuse of its discretion.

## II

As an alternate ground for affirmance of the judgment of the court, the defendant argues that the plaintiff's claim of restitution is barred by the terms of the parties' management services agreement. Paragraph 2.a of the parties' management services agreement provides that the plaintiff "shall be entitled to no additional compensation under this [a]greement, it being understood and agreed by the parties hereto that this [a]greement is intended to more fully set forth [the plaintiff's] obligations under the [o]perating [a]greement without compensation."

In *New Hartford* v. *Connecticut Resources Recovery Authority*, supra, 291 Conn. 454–55, our Supreme Court held that a claim for restitution based on an alleged implied in law contract is barred by an express contract that fully addresses the same subject matter. Similarly, 1 Restatement (Third), supra, § 2 (2), p. 15, provides that "[a] valid contract defines the obligations of the

parties as to matters within its scope, displacing to that extent any inquiry into unjust enrichment."

The facts of record in this case closely resemble those of *Meaney* v. *Connecticut Hospital Assn., Inc.*, 250 Conn. 500, 523, 735 A.2d 813 (1999), in which our Supreme Court held that an employee could not recover in unjust enrichment against his employer for its failure to pay him incentive compensation when his express employment contract, in comprehensive fashion, specified the terms of the employee's salary without providing for such compensation. Pursuant to *Meaney*, without a finding by the court that the plaintiff in this case performed services not contemplated by his contracts with the defendant, we agree with the defendant that the plaintiff cannot prevail on his claim of unjust enrichment.

In sum, we conclude that the record as a whole convincingly demonstrates that the trial court properly determined that the plaintiff failed to establish the requisite factual underpinning for his claim that the defendant was unjustly enriched by the plaintiff's design and construction of a golf course. Accordingly, the court did not abuse its discretion in rendering judgment in favor of the defendant.

The judgment is affirmed.

In this opinion the other judges concurred.